## RAILWAY COMPANY *v.* SMITH.

### Opinion delivered February 9, 1895.

1. *Railway—Overcharge—Right to recover penalty.*

    One who goes upon a railway train for the sole purpose of paying an overcharge for transportation, if demanded, and bringing an action for the penalty prescribed by the statute in such cases, is entitled to recover such penalty if the company demands and he pays the overcharge.

2. *Champerty—When not a defense.*

    A champertous agreement between plaintiff and his attorney in an action to recover a statutory penalty is not cause for abating the action.

3. *Overcharge—Mistake as defense.*

    It is no defense to an action against a railway company to recover a penalty for an overcharge of passenger fare that the overcharge was made through mistake as to the distance between the stations on defendant's road between which plaintiff travelled.

4. *Reasonableness of rates fixed—Sufficiency of answer.*

    Assuming that the courts can inquire into the reasonableness of rates fixed by the legislature for the carriage of passengers, an allegation that a certain railway company cannot operate its road under the act of April 4, 1887, fixing the rates of passenger fares, (1) because "the traffic and business over the same, both in passengers and freight, is so small and unremunerative that it cannot and has not been able to operate its railway under said statute as aforesaid without an actual loss," and (2) "because of its inability to pay the interest upon its just debts and the cost of maintaining and operating its railroad in a safe and proper condition," is insufficient on demurrer, as the business of the road might be so small that no reasonable rate would make its passenger rates profitable, and the debts might, by reason of extravagance, loss or mismanagement, be so large that no reasonable rate would enable the road to pay interest upon its debts.

5. *Reasonableness of rate—How determined.*

    An allegation that a passenger rate fixed by the legislature is unreasonable in that the actual cost and expenses of transporting each passenger and his baggage over defendant's road are more than 3 cents a mile, and that by reason thereof defendant

is compelled to transport passengers at a loss is insufficient, on demurrer, in failing to show that the rate fixed by the act will not yield a profit upon defendant's aggregate passenger and freight business.

6. *Competency of jury—Bias.*

Where a number of cases, involving the same issue, are pending against the same defendant, one who has sat as a juror in one of them, and rendered a verdict against defendant therein, or who was plaintiff in another of such cases, is presumed to be under a disqualifying bias against defendant, and incompetent to sit as juror in another of such cases.

7. *Overruling objection to juror—When prejudicial.*

It cannot be said that the erroneous overruling of an objection to a juror was harmless if the evidence was not so conclusive as to prevent the jury from coming to any other conclusion than that contained in their verdict.

Appeal from Crawford Circuit Court.

HUGH F. THOMASON, Judge.

Dudley Smith, a minor, by his next friend, sued the Missouri Pacific Railway Company and the Little Rock and Fort Smith Railway Company, and alleged that the two defendants owned and operated in Arkansas a line of railroad of more than 75 miles in length; that, in January, 1891, said defendants demanded and received from plaintiff, as his fare over said road from Dyer to Alma, regular stations, and return, the sum of 20 cents; that the distance between said stations did not exceed five miles, and that said charge was unlawful. Damages were laid at $600, with attorney's fees and costs.

The Little Rock & Fort Smith Railway Company filed a separate answer containing nine paragraphs, numbered respectively 1, 2, 3, 4, 4½, 5, 6, 7, 8. The first paragraph denied that it had "wrongfully, illegally or improperly" exacted from plaintiff a greater rate of fare between the stations mentioned than allowed by law.

The second paragraph of the answer was as follows:

"2. And for a second defense, defendant says: It denies that plaintiff was a *bona fide* passenger upon de-

fendant's train on the days alleged in said complaint, for the purpose of going from Alma to Dyer, or elsewhere. It denies that he got upon said train for any other purpose than that of knowingly, wilfully and intentionally inducing, persuading and entrapping this defendant into a violation of the laws of the State of Arkansas, entitled 'An act to regulate the rates of charges for the carriage of passengers by railroads,' approved April 4, 1887. It charges the fact to be that the plaintiff in this case was invited, persuaded, and induced by D. B. Locke, now attorney of record for plaintiff in this case, and an attorney at law, duly commissioned and licensed to practice law in the State of Arkansas, to board defendant's train for the sole, only and avowed purpose of knowingly, intentionally and fraudulently inducing this defendant, in ignorance and by mistake, to violate the law in making an overcharge for passenger fare from Alma to Dyer. It charges that said attorney, as aforesaid, offered to and paid the plaintiff a sum of money now unknown to defendant, and that the plaintiff received said money from said attorney for the sole, only and avowed purpose of getting upon defendant's train, and riding from Alma to Dyer, and thereby paying said sum of money to the conductor of defendant's train, and thus knowingly and fraudulently inducing the defendant, or its servants, to innocently, mistakenly and unintentionally violate the laws of the State of Arkansas. And it further charges that the plaintiff received said money from the said attorney, under the contract, agreement, inducement and understanding between said plaintiff and said attorney, that the said plaintiff should get upon defendant's train for the express purpose, and that he should pay said illegal fare with the knowledge and belief that said fare was illegal, and that in receiving the same this defendant was ignorantly, unintentionally and mistakenly violating the laws of Arkansas; and that, after

said payment should have been made, it was agreed between plaintiff and the said attorney that the said attorney of record in this case should institute this suit, and that the proceeds, in the shape of fines, penalties and attorney's fees, when recovered, should be divided equally between them. Wherefore, this defendant says that plaintiff, having been a party to the violation of the statutes above referred to, if any violation there was, his acts, having been barratrous and champertous, are in violation of law, and without equity or justice to sustain them. And, whereas, the said plaintiff is seeking to take advantage of his own wrong, he cannot recover in this action, and the defendant prays to be dismissed," etc.

"3. And for a third defense, defendant says that, denying that it has in any manner violated the act of the general assembly of the State of Arkansas, entitled 'An act to regulate the rates of charges for the carriage of passengers by railroads,' approved April 4, 1887, under which this suit is instituted, it says that, under the terms of section 1 of said act, it is made unlawful for any railway, whose line of railroad within the State is over seventy-five miles long, to charge any one passenger carried on such line within this State over three cents per mile; that section 3 of said act imposes a penalty of not less than $50 nor more than $300 for every such offense, with costs and attorney's fees, to be recovered by the party against whom the overcharge is made: This defendant would show that, under the terms and rates prescribed by said statute, it cannot keep up, maintain and operate its railway except at a heavy loss; that its line of railway is located wholly within the State of Arkansas, and is one hundred and sixty-seven miles in length, running between the cities of Little Rock and Fort Smith; that the traffic and business over the same, both in passengers and freight, is so small and unre-

munerative that it cannot, and has not been able to, oper-
ate its railway, under said statute as aforesaid, without
an actual loss. Defendant therefore says and charges
that said statute, forbidding this defendant from charg-
ing any one passenger a greater rate than three cents per
mile, is entailing a great and daily loss upon this defend-
ant, which will in the end amount to a total confiscation
and destruction of its property, rights and franchises,
because of its inability, under such rate, to pay the in-
terest upon its just debts, and the cost of maintaining
and operating its railroad in a safe and proper condition.
Defendant charges that said section one of the act
aforesaid, in the establishment of such rates of three
cents per mile over defendant's railway, and against its
will, is in violation of section eight, article two, of the
constitution of Arkansas, in this, that the establishment
of such rates by the State, against the will of the com-
pany, was, *pro tanto*, a taking of defendant's property,
and depriving it thereof without due process of law, and
was therefore void and of no effect."

The fourth paragraph was the same as the third,
except that the act of April 4, 1887, was alleged to be a
violation of the fourteenth amendment of the constitution
of the United States.

Paragraph No. 4½ of the answer was as follows:

"4½. And, for a further defense defendant says
that the act of the general assembly of the State of
Arkansas entitled 'An act to regulate the rates of
charges for the carriage of passengers by railroads,'
approved April 4, 1887, under which this suit is insti-
tuted, fixes the rate for the carriage of a passenger at
three cents per mile, [and] is unreasonable in this, that
the actual cost and expense of transporting each passen-
ger and his baggage over defendant's road is more than,
and in excess of, three cents per mile, the maximum

charge allowed by said statute for such transportation, and that by reason thereof defendant is compelled to transport passengers over its said road at a loss; and defendant further says that it costs more than three cents per mile to transport each passenger and his baggage between the stations of Alma and Dyer, and that the sum of 20 cents, if it was demanded from plaintiff, and received by defendant's employees, is not adequate compensation for transporting plaintiff between the said two stations. Wherefore it says that said statute in effect takes from the defendant its property without due process of law, and is in violation of the same, and deprives the defendant of its property without due process of law, and is in violation of section one of the fourteenth amendment to the constitution of the United States, and is therefore void and of no effect."

"5. And for a fifth defense defendant says that section three of the act of the general assembly of the State of Arkansas entitled 'An act to regulate the rates of charges for the carriage of passengers by railroads,' approved April 4, 1887, under which this suit is brought, provides that the railway company 'shall forfeit and pay for every violation of said act any sum not less than $50 nor more than $300, and cost of suit, including a reasonable attorney's fee to be taxed by the court, to be recovered by the party aggrieved.' This defendant would show that said fine and penalties are unjust, unreasonable and excessive, and in violation of section nine, article two, of the constitution of the State of Arkansas, which declares that excessive fines shall not be imposed, and is therefore void and without effect."

"6. And for a further and sixth defense defendant says that section three of the act of the general assembly of the State of Arkansas entitled "An act to regulate the rates of charges for the carriage of passengers by railroads,' approved April 4, 1887, under which this

suit was brought, provides that the railway company 'shall forfeit and pay for every violation of said act any sum not less than $50 nor more than $300, and costs of suit, including a reasonable attorney's fee to be taxed by the court, to be recovered by the party aggrieved. This defendant would show that said fine and penalties are unjust, unreasonable and excessive, and are in violation of the eighth amendment of the constitution of the United States, which declares that excessive fines shall not be imposed, and is therefore void and without effect."

"7. And, for a seventh and further defense, this defendant says that, denying that it wrongfully, illegally and improperly exacted from said plaintiff a rate of fare greater than that allowed by law, or that it knowingly or fraudulently made or exacted any such unlawful fare, as alleged, or that it is subject to any fine or penalty therefor, it charges the truth to be that its line of railroad, as now constructed, was originally constructed, owned and operated by a corporation duly organized under the laws of Arkansas, and called the Little Rock & Fort Smith Railroad Company. That the Little Rock & Fort Smith Railroad Company surveyed and laid out said line of railroad from Little Rock to Fort Smith, made the original profiles, and constructed, measured and established the distances between its two termini and all intermediate points, as aforesaid, which distance was ascertained to be and fixed at one hundred and sixty-seven miles; that the distances between the various stations on said railroad were duly measured and laid off by said original owner of said railroad, and the distance between Alma and Dyer, according to the measurement made, fixed at more than six and three-quarter miles. That said railroad company duly mortgaged its said roadbed for the purpose of completing the construction and equipment of

its railway, and in so doing said loan was made, and said mortgage was predicated upon said distances, as measured, ascertained and fixed by the engineer in charge of the construction of said railway, and were afterwards adopted by said company in the fixing and establishing of its rates and charges over said road. Defendant would further show that said mileage, as found and established by the said Little Rock & Fort Smith Railroad Company, was the basis upon which the contractors were paid for the construction of said road, and was at the time believed to be true and correct in every essential feature.

"It would further show that said mortgage, executed on the 22d day of December, 1869, upon all of its property by the said Little Rock & Fort Smith Railroad company, was, on the 6th day of November, 1874, duly foreclosed, and decreed to be sold by the United States circuit court for the eastern district of Arkansas, and that, on December 10, 1974, it was sold under said decree and bought by George O. Shattuck, Francis M. Weld and George Ripley, and the sale duly confirmed by the court; that on the 8th of June, 1875, the present corporation, this defendant, was duly organized under the laws of Arkansas, and thereupon bought the said railroad from the said Shattuck and associates. Immemediately thereafter this defendant, the Little Rock & Fort Smith Railway Company took charge of said roadbed, tracks and property, and began operating the same, and has done so ever since. And this defendant would show, and charge the truth to be, that when this defendant, the present company, took charge of said line of railroad, it found the mileage and distances established and fixed, as hereinbefore stated, by its predecessor, and supposing and believing that the said mileage and distances were correct, it so accepted the same, and continued to charge as pas-

senger fare, rates and amounts between the various stations as by law required, based on the said mileage and distances so fixed and established by the said Little Rock & Fort Smith Railroad Company, the former owner of said line of railroad, as aforesaid. Based upon said mileage and distances, this defendant issued its first mortgage bonds, and in all other respects it accepted the same as true and correct, and conformed to the said mileage and distances so established and fixed by the said Little Rock & Fort Smith Railway Company, believing the same to be correct, and having no reason to doubt that the said measurement was correct; that the charge of twenty cents fare from Alma to Dyer, if made by this defendant, was made upon the measurement ascertained and fixed by its predecessor, the former owner of said road; that this defendant believed the same to be an honest and correct measurement, and up to the institution of this action had no cause or reason to believe or suspect that there was any error in said mileage.

"And, while again denying that it has been guilty of any violation of law, as by plaintiff alleged, it says, that if it should be found that there was an overcharge by reason of an error in the mileage, as established by its predecessor and adopted by it, it avers that the same was made purely and entirely by reason of the mistake as aforesaid, and without any knoweldge or design or intention on the part of this defendant to evade or violate the laws of this State fixing the rate of charges for passenger fare within the State.

"Defendant submits and insists that, if the overcharge was made, as alleged in the complaint, the amount fare having been charged and received by mistake and for error in the computation of mileage, as aforesaid, it would be unreasonable, unconscionable and inequitable for defendant to be subjected to the harsh penalty claimed and demanded by plaintiff, and against which

a court of equity ought to and can relieve. And if defendant is liable to plaintiff in any manner by reason of the mistake aforesaid, it ought not, in equity and good conscience, to be required to do more than to refund the amount claimed to be an overcharge, to-wit: the sum of 10 cents, and legal interest thereon, and defendant now offers to pay back, and now brings into court and tenders to plaintiff, the amount of said alleged overcharge, with legal interest on same up to the present time. Defendant submits that, having alleged and shown the mistake and circumstances under and by which the alleged overcharge, if any, was made, if made at all, the same makes an equitable defense that can be and is only available in a court of chancery; it therefore prays that this cause be transferred to the equity side of the docket of this honorable court, and that the same may be there heard and considered under the rules and practice of equity, where such matters as herein alleged are properly and only cognizable and relievable. Wherefore, this defendant makes this answer a cross-complaint, and prays that the plaintiff (in the original complaint), on payment to him of the amount of the sum or various sums claimed as overcharge and interest, as herein tendered, be by the order and decree of this honorable court forbidden and enjoined from attempting to collect and enforce any statutory or other penalty against this defendant, as prayed in the original complaint.''

''8. And, for a further and final defense, defendant says that, denying that it has been knowingly, intentionally or fraudulently guilty of a violation of the law, as alleged, yet, nevertheless, it charges the truth to be that the plaintiff, Dudley Smith, and the attorney for plaintiff, D. B. Locke, combining and confederating together and with divers other persons, as yet unknown to this defendant (whose names defendant prays, when discov-

ered, may be inserted herein and made parties to this
suit, with proper and sufficient words to charge them
with the premises), in order to oppress and injure this
defendant, and knowing or believing that there was an
error in the mileage and the charge for passenger fare
on that particular part of defendant's road mentioned in
the complaint, and which was unknown to defendant,
entered into a combination and conspiracy between and
among themselves, induced and brought about by plain-
tiff's counsel, at his special instance, device, suggestion
and request, and who furnished the money out of his
own pocket, and thereby sought to induce this defendant
to violate the statute laws of the State of Arkansas, in
making what they conceived to be an improper and ille-
gal charge for fare, for the sole purpose of making this
defendant violate the laws, in ignorance that it was so
doing, and for the sole purpose of instituting this suit,
with many others of like character.   That, by reason of
said conspiracy, and said money paid by said D. B. Locke
plaintiff's attorney, plaintiff entered upon defendant's
railway cars, and made a trip over defendant's railroad
from the points named in its complaint, not for the pur-
pose of business or pleasure, but solely for the purpose
of carrying out and perfecting said combination and con-
spiracy against this defendant, and for the especial pur-
pose of speculating in the penalties imposed by law for
illegal charges or overcharges, and for the especial pur-
pose of inducing this defendant, ignorantly and uninten-
tionally, to violate the laws as they conceived them to be,
thus becoming a *particeps criminis* in violation of the
statutes, from and through which the said plaintiff and
his co-conspirators are now seeking, and hoping, by the
intervention of this court, to obtain large sums of money
wrongfully and fraudulently against this defendant.
And defendant admits and insists that, such con-
spiracy being true, as alleged, and it being further al-

leged that plaintiff has willingly, designedly and intentionally paid the overcharge, with the hopes and purpose in view as aforesaid, the said plaintiff is a party to the violation of the statute of Arkansas, if any violation there be, and that, in equity and good conscience, he is entitled to no relief, either in law or equity, as against this defendant herein. And defendant says that if it has made an overcharge against plaintiff, it was induced to do so by the acts of the plaintiff and his co-conspirators, by the conspiracy and combination as aforesaid; and it did so ignorantly, unintentionally and by mistake, and that, therefore, it is not liable for violation of the statute, as charged herein. And it prays that this cause may be transferred to the equity side of the docket of this court, where alone this case is cognizable, and for the reason that a court of law has no jurisdiction to hear, determine or relieve this defendant against an honest mistake, or a fraudulent conspiracy organized against it, as charged in this answer, and it prays that the cause may be transferred, as aforesaid, to the end that proper relief may be granted this defendant. And this defendant further makes this answer a cross-complaint, and prays that said Dudley Smith, and D. B. Locke, his attorney, be made parties defendant to the same, and required to answer herein at an early day, to be named by the court, and that, upon a final hearing of the issues of this cause, if it should be found that this defendant has mistakenly made an overcharge, or is guilty of any omissions, it prays that, upon payment of said overcharge and interest to the said plaintiff, this honorable court shall make its order and decree forbidding and enjoining the said plaintiff, and his attorney, from attempting to prosecute this suit, or to enforce any statutory or other penalty against this defendant, as prayed in said complaint, to the end that it may

be granted the relief as prayed, and such other and further relief as to the court may seem just and proper, it would ever pray, etc. And this defendant would respectfully pray that this answer as a whole be taken as a separate and distinct answer to each one of the said several paragraphs or causes of action, as set up in said plaintiff's complaint."

The Missouri Pacific Railway Company filed a separate answer adopting the answer of its co-defendant, and further denied that it owned, held or operated the Little Rock & Fort Smith Railway Company, or that it had any control over the railroad running between the stations of Alma and Dyer.

To the answers the plaintiff demurred. To the paragraphs of the Little Rock & Fort Smith Railway Company's answer numbered 2, 3, 4, 4½, 5, 6 and 7, and to that numbered 8, except so much as alleged that the overcharge was "induced" by plaintiff and his co-conspirators, the demurrer was sustained, and the motion to transfer to equity denied. Verdict and judgment for two hundred dollars were rendered against both defendants, from which they have appealed.

*Dodge & Johnson* for appellants.

1. The court erred in overruling the motion to transfer the case to equity. The defendants set up meritorious and equitable grounds of defense, by which they were clearly exonerated from the payment of the punitive and exemplary damages claimed by plaintiff under the guise of a statutory penalty. The 2nd, 7th and 8th paragraphs of defendant's answer contain all the elements of chancery jurisdiction—fraud, accident and mistake. 38 Ark. 562; 18 Wall. 516, 538; 7 N. Y. Com. L. Rep. 150; 7 Law. Ed. N. Y. Ch. Rep. 980; 3 Dan. Ch. Pr. & Pl. 1878-9; 12 Vesey, Jr. 282; Kerr on Inj. sec. 29; 21 O. St. 586; 2 Bailey

(S. C.), 584; 26 Me. 453; 2 N. Y. 182; 35 N. Y. 9; 21
O. St. 586; 10 N. H. 438; 13 Ala. 134; 2 Pet. 538; 7
Wall. 558; 11 Wall. 369; 72 Pa. St. 466; 107 Ill. 304;
26 Pa. St. 165; 47 Md. 241; 6 A. & E. R. Cases, 464;
84 N. C. 688; 11 Ohio, 131; 30 Mass. 94; 129 Mass.
407; 2 W. Blackst. 1226; Suth. St. Const. sec. 346–359;
9 A. & E. R. Cases, 168; 18 Me. 166; 38 *id*. 103.    The
so called "penalty" in the Overcharge Act is not to be
distinguished from statutes giving double or exemplary
damages.    49 Ark. 455; 25 S. W. 75; 55 Ark. 200.

2.    The demurrer to the answers in this case inter-
posed by plaintiff in short upon the record was erro-
neously sustained; hence the defendants were de-
barred from making the defenses set up therein.    The
act is unreasonable and unjust, in that the actual
cost and expense of transporting each passenger
and his baggage is more than three cents per mile.
This was confessed by the demurrer.    The act takes
the property of defendants without due process of law
and violates sec. 1 of 14th amendment, const. U. S.    94
U. S. 113, 181; 94 *id*. 155; *Ib*. 164; *Ib*. 179; 110 U.
S. 348–354; 116 *id*. 307, 331; 118 *id*. 557, 569; 134 *id*.
418; 35 Fed. 866 (1888); 125 U. S. 680; 38 Fed.
656.    The principles of the Minnesota case (134
U. S. 418) stand to-day without impeachment, question or
qualification by the highest tribunal of our country.
These principles are that legislative regulation of
fares and rates, whatever its scope, is limited by the
line of reasonableness.    If unreasonable, they deprive
the company without due process of law, and the
question whether they are unreasonable is a judicial
question, which must be decided in a suit upon pleadings
and issues, and upon proofs, by the judicial tribunals.
See also 143 U. S. 517, 339; 13 Fed. 754; 154 U. S. 362,
398.

3. The demurrer to paragraph three of .the answer was likewise erroneously sustained. Art. 2, secs. 8 and 22, Const. Ark. 1874; 49 Ark. 329. In this case it is clearly intimated that, had the evidence shown that the statute works a "crying injustice" to defendant, it would have been held open to judicial interference. 125 U. S. 680. See cases *supra* on this point.

4. In empaneling the jury in this case, seven distinct errors were committed, each one of which entitles these appellants to a reversal. Sec. 3969, Mansf. Dig., gives litigants the right to a fair and impartial trial before a fair, unbiased and unprejudiced jury. In this case the jurors were jurors in similar cases, where the evidence, issues and many of the witnesses were the same. 21 Ark. 333–337; 3 Blackst. Com. 363; 100 Ind. 357; 28 Mass. 467; 8 Cush. 72; 37 Ia. 386; 2 N. J. Law, 651; 37 Mass. 377; 60 Ga. 521; 1 G. Green (Ia.), 135, 385; 7 Tex. App. 607; 9 *ib.* 279; 14 Wend. 132; 1 Thomps. Trials. 51; Co. Litt. p. 157; Bac. Abr. (6 Ed.) 137.

5. The demurrer to paragraphs 2 and 8 should have been overruled. Plaintiff was not a *bona fide* passenger; he was *privy* to a violation of the law, knowingly, intentionally and fraudulently—a *particeps criminis.* 2 Bouv. p. 282; Broom, Leg. Max. p. 690, 704–5; 110 U. S. 510; 46 Barb. 618; 37 Cal. 175; 8 Abb. N. C. 449; 44 N. Y. 91; 30 How. Pr. 144; 4 Int. Com. Rep. 203.

6. The demurrer to the seventh paragraph was erroneously sustained. If an overcharge was made, it was unintentional, and done by mistake or error in computation of mileage. 25 S. W. 504, and cases cited under point one, *supra.*

7. The verdict is contrary to the evidence. The burden was on plaintiff, and the evidence as to the distance does not support the verdict.

8. There is no proof that the Missouri Pacific Company owned or operated the Little Rock & Fort Smith railroad.

*D. B. Locke* and *De E. Bradshaw* for appellee.

1. The motion to transfer to equity was properly denied. Diligence is as much the province of equity as relief against penalties. There was no accident, fraud or mistake—the charge was made wilfully and knowingly. 54 Ark. 101. The statute is in the nature of a police regulation. 143 U. S. 417.

2. The demurrer was properly sustained to paragraph three. See 94 U. S. 113; 143 *id.* 517; 154 *id.* 362; 125 *id.* 680; 118 *id.* 557.

3. The demurrer to paragraph two was properly sustained. 54 W. S. 101; *Ib.* 116; 56 Ark. 245.

4. Jurors who had tried similar cases were not disqualified. The facts, as alleged, were not disputed, except by denials which were not supported by any proof whatever. If the facts then stand as admitted, the verdict could have been ordered by the court in each case, because it was simply the construction of a statute, which is the province of the court alone. In many of the cases no juror sat who had a similar case pending.

BATTLE, J. The demurrer of appellee to the answer of appellants presents four questions of law:

First. Is a person, who goes upon the train of a railway company for the sole purpose of paying an overcharge for transportation, if demanded, and bringing an action for the penalty prescribed by the statute in such cases, entitled to recover such penalty if the company demands and he pays the overcharge?

Second. Was appellee barred from recovering the penalty for such overcharge by reason of champerty?

Third. Are appellants entitled to any relief in equity on account of a mistake?

Fourth. Does their answer show that three cents a mile for the transportation of passengers is an unreasonable rate of compensation for the Little Rock & Fort Smith Railway?

1. The first question is decided in the affirmative in *Railway Company* v. *Gill*, 54 Ark. 101. We adhere to the ruling in that case.

<span style="float:right">1. Right to recover penalty for overcharge</span>

2. The "champertous" agreement between appellee and his attorney D. B. Locke, set out in the second paragraph of the answer, if available for any purpose, can only be set up when the agreement is sought to be enforced. The right of appellee does not grow out of it, but solely out of the fact that the railway company charged and received a greater compensation than that allowed by law. The company was not justified by the agreement in demanding and receiving the excessive compensation. How then could it be a good defense? No effort was made in this suit to enforce it. The right of action in this case is not dependent on or controlled by it. It could not, then, affect the right to the penalty. *Burnes* v. *Scott*, 117 U. S. 582; *Allison* v. *Chicago etc. R. Co.* 42 Iowa, 274; *Small* v. *C. R. I. & P. R. Co.* 8 N. W. 437; *Brinley* v. *Whiting*, 5 Pick. 348; 3 Am. & Eng. Enc. of Law, pp. 86, 87, cases cited.

<span style="float:right">2. When champerty not a defense.</span>

3. The fact that appellants were mistaken as to the distance for which transportation was charged does not relieve them. Equity will not extend aid to any one on account of a mistake which is the result of culpable negligence. In *Duke of Beaufort* v. *Weld*, 12 Clark & F. 248, 286, Lord Campbell said: In no case had a court of equity "been successfully asked to inter-

<span style="float:right">3. Effect of mistake in overcharge.</span>

pose in favor of a man who wilfully was ignorant of that which he ought to have known—a man who, without exercising that diligence which the law would expect of a reasonable and careful person, committed a mistake, in consequence of which alone the proceedings in court have arisen.   No such a case is to be found, and it would be a reproach to the law if there had been such a decision.''

In *United States* v. *Ames*, 99 U. S. 35, 47, Mr. Justice Miller said : ''Ignorance of the facts is often a material allegation, but it is never sufficient to constitute a ground of relief, if it appears that the requisite knowledge might have been obtained by reasonable diligence.''

Whatever limitations there may be upon the rule as to diligence, stated in the authorities we have cited, it certainly applies where it is the duty of the party to make the inquiry and obtain the information.   In this case appellants were prohibited from charging and collecting more than three cents a mile for carrying each passenger over the Little Rock & Fort Smith Railway. It was their duty to the passengers traveling in their trains to ascertain the distance between the stations on their road, in order to protect them against the payment of excessive rates of fare.   One of the appellants, the Little Rock & Fort Smith Railway Company, acquired its road on the 8th of June, 1875, and charged and collected the alleged excessive rates in January, 1891, more than fifteen years after it came into possession of the road.   It surely was not excusable for any mistake which was not induced by the appellee and his confederates, if for any.

The demurrer was overruled as to so much of the answer as is in these words:   ''And defendant says that if it has made an overcharge against plaintiffs, it was induced to do so by the acts of the plaintiff and his co-

conspirators, by the conspiracy and combination as aforesaid; and it did so ignorantly, unintentionally, and by mistake, and that, therefore, it is not liable for violation of the statute, as charged herein." If appellants were induced by the acts of appellee, and others acting in concert with him, to overcharge, they were allowed to set up that fact in their answer, and cannot, therefore, complain of the court depriving them of their defense in that respect.

4. Section one of the act of the general assembly of the State of Arkansas, entitled "An act to regulate the rates of charges for the carriage of passengers by railroads," approved April 4, 1887, under which this action was brought, provides that it shall be unlawful for any railway, whose line of railroad is over seventy-five miles long, to charge for carrying any passenger over such line, within this State, more than three cents a mile. Appellants allege in their answer that this rate is unreasonable as to the Little Rock & Fort Smith Railway, is in violation of the constitution of the United States and of the State of Arkansas, and as a reason for so alleging say: "This defendant would show that, under the terms and rates prescribed by said statute, it cannot keep up, maintain and operate its railway except at a heavy loss; that its line of railway is located wholly within the State of Arkansas, and is one hundred and sixty-seven miles in length, running between the cities of Little Rock and Fort Smith; that the traffic and business over the same, both in passengers and freight, is so small and unremunerative that it cannot, and has not been able to, operate its railway under said statute as aforesaid without actual loss. Defendant therefore, says and charges that said statute forbidding this defendant from charging any one passenger a greater rate than three cents a mile, is entailing a great and daily loss upon this defendant, which will in the end

4. Reasonableness of passenger rates.

amount to a total confiscation and destruction of its property, rights and franchises, because of its inability, under such rate, to pay the interest upon its just debts, and the cost of maintaining and operating its railroad in a safe and proper condition."

Is the constitutional question sought to be raised by the defendant's answer presented in such a manner as to make it the duty of this court to decide it? It is not, unless it appears that this cause cannot be disposed of without deciding it. As to the duty of courts to decide questions affecting the validity of acts of the general assembly, Judge Cooley says: "Neither will a court, as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause. 'While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both proper and more respectful to a co-ordinate department to discuss constitutional questions only when that is the very *lis mota.* Thus presented and determined, the decision carries a weight with it to which no extrajudicial disquisition is entitled.' In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when, consequently, a decision upon such question will be unavoidable."

Have the appellants presented the question as to the validity of the act of April 4th in such a manner as

to make it our duty to pass upon it? The right of the legislature to fix the maximum rates of compensation for the transportation of persons and property by railways is unquestioned. *Dow* v. *Beidelman*, 49 Ark. 325. But it is said that the courts can inquire into the reasonableness of such rates, and, finding them unreasonable, can declare the act fixing them unconstitutional. Assuming that this contention is correct, the presumption is that they are reasonable, and the burden is on the appellants to affirmatively show that, as to them, they are not. Have they done so? The Little Rock & Fort Smith Railway Company alleges that it cannot keep up, maintain and operate its railway under the act of April 4, 1887, except at a heavy loss. Why? Two reasons are given: (1) because "the traffic and business over the same, both in passengers and freight, is so small and unremunerative that it cannot, and has not been able to, operate its railway under said statute as aforesaid without an actual loss;" and (2), "because of its inability under such rate to pay the interest upon its just debts and the cost of maintaining and operating its railroad in a safe and proper condition."

In *Reagan* v. *Farmers' Loan & Trust Co.* 154 U. S. 362, which was an action against State railroad commissioners to restrain the enforcement of rates, charges and regulations prescribed by them, because they were unjust and unreasonable, a demurrer to the bill was filed. Mr. Justice Brewer, in speaking of general allegations in the bill similar to those contained in appellants' answer, said: "There are often, in pleadings, general allegations of mixed law and fact, such as of the ownership of property and the like, which, standing alone, are held to be sufficient to sustain judgments and decrees, and yet are always regarded as qualified, limited, or even controlled by particular facts stated

therein. It would not, of course, be tolerable for a court administering equity to seize upon a technicality for the purpose or with the result of entrapping either of the parties before it. Hence, we should hesitate to take the filing of the demurrers to these bills as a direct and explicit admission on the part of the defendant that the rates established by the commission are unjust and unreasonable."

The rule, as stated by Mr. Justice Brewer, applies forcibly in this case. Appellants attempt to show, in their answer, the unreasonableness of the rates fixed by the statute in two sentences. In the first they make the general allegation "that, under the terms and rates prescribed by said statute, it (railroad company) cannot keep up, maintain and operate its railway except at a heavy loss." In the second sentence they repeat the same allegation as follows : "that said statute forbidding this defendant from charging any one passenger a greater rate than three cents a mile is entailing a great and daily loss upon this defendant, which will, in the end, amount to a total confiscation and destruction of its property, rights and franchises." After making the first general allegation, they specialize or state the particular facts as follows: "The traffic and business over the same, both in passengers and freight, is so small and unremunerative that it cannot, and has not been able to, operate its railway under said statute as aforesaid without actual loss." Why states these facts? Obviously to show in what way the loss occurred—to show the reasons for making the general allegation. They could serve no other purpose. To emphasize the reason they had already given, they expressly say that the reason they make the general allegation is "because of its (company's) inability under such rate to pay the interest upon its just debts and the cost of maintaining

and operating its railroad in a safe and proper condition."

The general allegation in the answer as to the effect of the act of April 4 upon the road, limited or controlled by the particular facts, therefore means that the road could not be operated without loss, because the traffic and business over the same are too small and unremunerative to pay the interest upon its just debts and the cost of maintaining and operating it in a safe and proper condition.   According to this interpretation, the answer does not show, directly or indirectly, expressly or impliedly, or in any other manner, that the rate of three cents a mile for the transportation of passengers is unreasonable.   As to the transportation of property our attention has not been called to, and we have failed to find, any statute fixing rates.   The fact that the business and traffic are small and unremunerative does not show that the passenger rate of three cents a mile is unreasonable.   That might be so, and a rate which would defray the expenses of operating the road or make it profitable would be exorbitant and oppressive to the shipper and passenger, and unreasonable.   In other words, it might be so, and no reasonable rate would be sufficient to defray expenses.   The additional fact that the traffic and business of the road, when operated according to the act of April 4, and no passenger was charged exceeding three cents a mile, would not pay the interest on the debts of the railway company, and the expenses of operating the road, does not show that the maximum passenger rate of three cents a mile is unreasonable.   Rates of transportation sufficient to enable the road to realize a sum large enough to defray current repairs and expenses and pay a profit on the reasonable cost of building the road and equipping it ought to be reasonable.   The earnings of a road might be sufficient for this purpose, and yet not large enough to

pay expenses and interest on its debts. Large and unnecessary debts might have been contracted through extravagance, enormous salaries, and mismanagement, exceeding the cost of building and equipping the road, and bearing a rate of interest amounting to more than a reasonable profit on the capital necessary, when judiciously expended, to construct and equip the road. Like some individuals as to their business, railway companies can reach a point through extravagance, losses and mismanagement, when no reasonable rate or profit will enable them to maintain their roads and pay the interest upon their debts, and when failure and a sale of the road to other parties become inevitable.

5. How reasonableness of rate determined.

Appellants further allege that the act of April 4, was unreasonable in fixing the rate for the carriage of a passenger at three cents a mile, in this, that the actual costs and expenses of transporting each passenger and his baggage over the Little Rock & Fort Smith railway, are more than three cents a mile, and that by reason thereof the company operating the road is compelled to transport passengers at a loss. To dispose of this defense, it is sufficient to quote from the opinion in *Railway Company* v. *Gill*, 54 Ark. 112, as follows: "It (railway company) can only claim a profit from the operation of its entire line, and attack as unjust an act that denies it the right to fix such rates as will yield a profit upon its *aggregate* business."

The demurrer was properly sustained.

6. Competency of jurors.

5. The jury which tried the issues in this action were selected from the jurors who were impaneled for the term at or during which this cause was tried. Upon an examination under oath touching their qualifications as jurors, they severally stated that they had sat as jurors in a number of cases tried at said term "wherein several different plaintiffs had sued the defendants for certain sums of money as penalties under the statutes of

Arkansas for violations of the law by the defendants by making alleged overcharges in passenger fares between Alma and Dyer, and Dyer and Alma and other points on defendant's railroad ; that they knew that there was a large number of cases in character similar to this, pending in the court in which this action was tried ; that a large number had been tried ; and they had opinions as to the merits of all the cases tried before them, and as such jurors they had rendered verdicts upon the facts and issues brought before them." Four of them were plaintiffs in actions against the appellants in which the issues were the same as those involved in this suit. To the impaneling of them as a jury the appellants objected, and their objection was overruled. In this the court erred. The jurors objected to were incompetent to sit as a jury in this action. The law of this State provides that "no person who has formed or expressed an opinion concerning the matter in controversy, in any such suit, which might influence the judgment of such person, shall be sworn in the same case as a juror." Sand. & H. Dig. sec. 4257. The main issue in this case was the distance between Alma and Dyer. The question was, is the distance between these two stations less than the number of miles for which appellee paid appellants for transportation from Dyer to Alma? They had tried this issue, and returned verdicts at the same term of the court at which this case was tried. It was virtually the only issue in the actions tried. They had necessarily formed and expressed an opinion concerning the matter in controversy in this suit, under circumstances which affected their judgment in this case. "The law presumes them to have been under a disqualifying bias, and the objection" of the appellants should have been sustained. *Garthwaite* v. *Tatum*, 21 Ark. 336.

But appellee insists that this error was not prejudicial to the appellants, because the evidence in the case

7. When error in selection of jury is prejudicial.

was such as to prevent the jury from coming to any conclusion other than that contained in their verdict. Is this true? J. E. Broom, who testified in behalf of appellee, was the only witness who testified as to the distance between Dyer and Alma. Upon the correctness of his testimony the verdict depended. He testified that he was not a surveyor, but that he had measured the railway from Dyer to Alma with a chain called a surveyor's chain. He did not know whose chain it was, nor the length of it; but at the time he measured the distance he measured the chain (how is not shown) and multiplied the number of feet in a chain by the number of chains in the distance between the stations and divided the product by the number of feet in a mile. When asked how many feet did he estimate were in a mile, he answered: "Something like 5000 feet—5280." His testimony was unsatisfactory, and an unbiased jury could well have refused to accept his conclusions as correct. At first, it seems he could not state the number of feet in a mile, but at last did say 5280; and, notwithstanding he stated the number of feet and the distance between the stations named, he could or did not tell how long the chain was which he used in measuring. He stated that he did not remember. The fact upon which the issues mainly depended he could not state, but testified as to his conclusions; and his testimony was such that the correctness of his conclusions could not be determined. Under these circumstances, we cannot say the selection of the jury was not prejudicial to appellants.

For the error indicated the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Bunn, C. J., and Wood, J., concur in the judgment on the ground of disqualifying bias of the jury, but dissent as to the insufficiency of the pleadings, holding

that the answer is sufficient on demurrer, that the defects complained of should be reached by motion, and that the plaintiff is not shown to be a "party aggrieved," as contemplated by the act.