### STATE OF CONNECTICUT *v.* CERTAIN CONTRACEPTIVE MATERIALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued January 4—decided March 6, 1940.

*J. Warren Upson,* with whom was *William J. Secor, Jr.,* for the appellants (defendants).

*William B. Fitzgerald,* state's attorney, for the appellee (the state).

HINMAN, J. The state's attorney for New Haven County at Waterbury brought a complaint to Judge

McEvoy of the Superior Court alleging, under oath, that he "is informed and . . . suspects and has reason to suspect that books, records, registers, instruments, apparatus and appliances used and kept for the purpose of violating the criminal laws of this state and particularly the provisions of Sections 6246 and 6562 of the General Statutes" were kept and used in a specified building in Waterbury, and making application for a search warrant therefor. Judge McEvoy expressly found that probable cause existed for the complaint and issued the warrant. Under it a quantity of literature pertaining to birth control and numerous medicinal and other articles and instruments designed for the purpose of preventing conception were seized, and there was issued, pursuant to § 6441 of the General Statutes, a rule to show cause why they should not be adjudged a nuisance and ordered destroyed. The Birth Control League, Inc., and the Waterbury Maternal Health Center, admitting ownership of the articles, applied to be and were made parties defendant and filed a plea claiming, upon numerous grounds set up therein, that the proceeding be dismissed and the articles returned to them. This was denied and judgment rendered finding the facts alleged in the complaint to be true and ordering that the articles be destroyed, from which the defendants appealed to this court.

The paragraphs of the finding which are attacked are not material to the considerations found determinative of the case, which pertain to the conclusions to the effect that § 6439 of the General Statutes authorizes and empowers the issuance of a warrant for search for and seizure of contraceptive devices. The complaint and search warrant were predicated, and the state depends for justification thereof solely upon provisions in § 6439 of the General Statutes that "any

judge of the Superior Court . . . upon the complaint of any proper informing officer or upon the sworn complaint of any two credible persons . . . , alleging that they suspect or have cause to suspect that any tables, tickets, slips, papers, tokens, lottery tickets, books, records, registers, printing presses, instruments, apparatus, appliances, slot machines or any money or valuable prize, for the purpose of gaming, policy playing or carrying on lotteries *or for the purpose of violating any of the criminal laws of this state,* are manufactured, kept, deposited, stored, sold or used in any building, or part of any building, may issue a warrant commanding any proper officer to enter into such building, or part thereof, and search the same and take into his custody all such tables, tickets, slips, papers, tokens, lottery tickets, books, records, registers, printing presses, instruments, apparatus, appliances or slot machines or any money or valuable prize which he may find therein and keep the same securely until final action be had thereon." Dependence by the state is upon the general provision which we have italicized in the above quotation. The defendants pleaded that the warrant was illegally and unlawfully applied for and issued because § 6439 does not authorize the warrant when directed against contraceptive apparatus and literature, and that therefore § 6441 of the General Statutes does not provide for their condemnation and destruction, since the applicability of that section is dependent upon a valid seizure under § 6439.

The defendants' claim is that § 6439 is not to be construed as extending and applying to and authorizing search for and seizure of property such as that involved in the present case. In making this contention they invoke the rule of construction known as "ejusdem generis," which is that where general words follow an enumeration of persons or things, by words of particu-

lar and specific meaning, the general words will not be construed in their widest sense, but are to be held as applying only to persons or things of the same general kind or class as those specifically enumerated. Black, Interpretation of Laws, (2d Ed.) § 71; 2 Lewis' Sutherland, Statutory Construction (2d Ed.) § 422 et seq.; *Brown* v. *Congdon,* 50 Conn. 302, 309; *Dudley* v. *Hull,* 105 Conn. 710, 717, 136 Atl. 575; *Commonwealth* v. *Dejardin,* 126 Mass. 46. Specifically, the claim is that this statute applies only to property possessed for purposes akin to those enumerated—"gaming, policy playing or carrying on lotteries."

Where search and seizure has been extended by statute to cases in which the property sought has been used as a means of committing or is possessed with the intent to use it as the means of committing a criminal offense, the use of the process may not be extended by construction to any case not clearly covered by the statute. 24 R. C. L. 716; *State ex rel. Streit* v. *Justice Court,* 45 Mont. 375, 123 Pac. 405; *People ex rel. Simpson Co.* v. *Kempner,* 208 N. Y. 16, 101 N. E. 794. Such search warrants partake of the nature of criminal process, are drastic in their nature and it is the general rule that statutes authorizing them must be strictly construed. 56 C. J. 1160, 1184; *Giles* v. *United States* (C. C. A.) 284 Fed. 208, 212; *Perry* v. *United States,* 14 Fed. (2d) 88; *People* v. *Moten,* 233 Mich. 169, 170, 206 N. W. 506; *State* v. *Whalen,* 85 Me. 469, 27 Atl. 348. The rule of ejusdem generis therefore is to be given a strict application in interpreting such a statute, similar to that pertaining to statutes defining crimes and imposing penalties, so that no one can be brought under it "unless his case comes within its explicit terms, or within the absolutely clear intention of the act, as well as within the spirit of the law and the mischief intended to be remedied." 2 Black, op. cit.,

213. As examples of the application of the rule in the construction of penal statutes there are cited in this work, p. 214, cases in which provisions against maintenance of a faro bank, roulette table "or other instrument, device or thing for the purpose of gaming" or "other gambling devices" have been held not to include even ordinary dice, implements for lotteries or policy playing, and the like. *Marquis* v. *Chicago*, 27 Ill. App. 251; *Commonwealth* v. *Kammerer*, 11 Ky. Law Rep. 777, 13 S. W. 108; *State* v. *Bryant*, 90 Mo. 534, 2 S. W. 836. The general words are deemed to have been used, not in the broad sense which they might if standing alone, but as related to the words of more definite and particular meaning with which they are associated. 2 Lewis' Sutherland, op. cit., 815; *State* v. *Walsh*, 43 Minn. 444, 445, 45 N. W. 721. This is especially true when the persons or things specifically mentioned are all of one class, as are "gaming, policy playing or carrying on lotteries" in the statute now under consideration. *State* v. *Campbell*, 76 Iowa 122, 125, 40 N. W. 100.

It is apparent that most of the articles specified in § 6439, and in § 6440 hereinafter mentioned, are particularly adapted to use for some form of gambling or other activities involving hazard for gain or reward and all of them are capable of being utilized for some such purpose, indicating that the intent of the general clause "for the purpose of violating any of the criminal laws" was to cover illegal uses kindred to but other than gaming in its narrow and technical sense, policy playing or lotteries. Chapter 330 of the General Statutes includes several sections in this category to which the general clause might be applicable, including § 6280, pool selling; § 6316, betting on horse races; § 6318, playing at a game for any valuable thing, and § 6324, use of billiard table or slot machine for gaming.

A consideration underlying the rule is that if the Legislature had intended the general words to be used in their unrestricted sense there would have been no necessity or reason for enumeration of the particular persons or things. *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 194, 167 Atl. 709; *Donaghy* v. *State,* 29 Del. (6 Boyce) 467, 492, 100 Atl. 696, 707. So, here, if the general clause relied on was intended to embrace any and all things possessed for the purpose of violating any of the criminal laws of the state there would have been no necessity or reason for specifying particular violations, but the brief general provision would have sufficed.

Sections 6439 and 6441 originated as sections one and two, respectively, of Chapter 9 of the Public Acts of 1895. By Chapter 121 of the Public Acts of 1901 there was added to the first section a provision, now separated and contained in § 6440, that "the officer serving such warrant may, if he have reason to believe that any tickets, slips, papers, tokens, lottery tickets, books, records, registers, apparatus, appliances or slot machines, described in such warrant, are concealed in the garment of any person named in the warrant, search the garments of such person for the purpose of seizing the same. . . ." While the act of 1895 was entitled simply "An Act concerning Search Warrants," in the General Statutes, Revision of 1902, § 1496, and 1918, § 6592, as well as in the Revision of 1930, what is now § 6439 has been entitled "Search warrants for gambling and lottery implements," which is indicative of the construction and scope attributed to it by the revisers and by the General Assembly in adopting the Revision. There also is significance in action taken later in the same session of the General Assembly (1895) in adopting Chapter 205 of the Public Acts of 1895 amending and re-enacting § 1604 of the General

Statutes of 1888 (now § 6435) which made similar provision for search warrants for buildings used for producing, keeping or selling obscene literature, which the statute then (§ 1537 of the General Statutes of 1888) as now (§ 6244 of the General Statutes) prohibited, although such literature would be within Chapter 9 of the Public Acts of 1895 if it was intended to be as comprehensive as the state contends. We therefore conclude that § 6439 is not to be construed as authorizing the present proceeding, which consequently is invalid and should have been dismissed upon that ground.

This conclusion renders it unnecessary to discuss and decide the further contention of the defendants that the complaint and warrant are violative of the provision in § 8 of Article First of the Constitution of this state that "no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation," because the complaint did not contain allegations of fact from which, if proven, probable cause could be found, and because it did not allege that the complainant believed and had reason to believe the facts which were alleged but, instead, that he suspected and had cause to suspect that these facts were so. The numerous other points raised by the defendants in their plea are determined adversely to their claims in *State* v. *Nelson,* *State* v. *Goodrich,* and *State* v. *McTernan,* decided concurrently with this case.

There is error, the judgment is set aside and the case remanded with direction to dismiss the proceeding and order return of the seized property to the defendants.

In this opinion the other judges concurred.