J. Byron GRIMMETT *v.* STATE of Arkansas

5595                                              476 S.W. 2d 217

Substituted opinion on rehearing, February 21, 1972

*Tackett, Young, Patton & Harrelson,* for appellant.

*James L. Sloan,* of counsel on rehearing.

*Ray Thornton,* Attorney General; *James A. Neal,* Asst. Atty. Gen., for appellee.

Conley Byrd, Justice. Appellant J. Byron Grimmett, a dispensing physician of Waldo, Arkansas, was convicted of failing to maintain a complete and accurate record of drugs, contrary to the Arkansas Drug Abuse Control Act, Ark. Stat. Ann. § 82-2101 et seq. (Supp. 1971).

The section and subsections here involved provide:

"Ark. Stat. Ann. § 82-2107 (a) No person shall manufacture, compound or process in this State any

depressant or stimulant drug, except that this prohibition shall not apply to the following persons whose activities in connection with any drug are as specified in this subsection:

. . .

(a) (5) Practitioners licensed in this State to prescribe or administer depressant or stimulant drugs, while acting in the course of their professional practice.

. . .

(e) (1) Every person engaged in manufacturing, compounding, processing, selling, delivering or otherwise, disposing of any depressant or stimulant drug shall, upon the effective date [June 29, 1967] of this Act, prepare a complete and accurate record of all stocks of each drug on hand and shall keep such record for three years; except that if this record has already been prepared in accordance with Section 511 (d) of the Federal Act, no additional record shall be required provided that all records prepared under Section 511 (d) of the Federal Act have been retained and are made available to the Board upon request. When additional depressant or stimulant drugs are designated by the Board after the effective date [June 29, 1967] of this Act, a similar record must be prepared upon the effective date of their designation on and after the effective date of this Act, every person manufacturing, compounding, or processing any depressant or stimulant drug shall prepare and keep, for not less than three [3] years, a complete and accurate record of the kind and quantity of each drug manufactured, compounded, or processed and the date of such manufacture, compounding, or processing; and every person selling, delivering, or otherwise disposing of any depressant or stimulant drug shall prepare or obtain, and keep for not less than three [3] years, a complete and accurate record of the kind and quantity of each drug received, sold, delivered, or otherwise disposed of, the name and address from whom it was received and to whom

it was sold, delivered, or otherwise disposed of, and the date of such transaction.

. . .

(e) (3)  The provisions of paragraphs (1) and (2) of this subsection shall not apply to a licensed practitioner described in subsection (a) (5) with respect to any depressant or stimulant drug received, prepared, processed, administered, or dispensed by him in the course of his professional practice, unless such practitioner regularly engages in dispensing any such drug or drugs to his patients for which they are charged, either separately or together with charges for other professional services."

For reversal of the conviction and fine of $2,000, appellant contends, among other things, that the court erred in issuing the search and seizure warrant.

On the day of arrest Duke Atkinson, an Arkansas State Policeman with the Narcotic and Dangerous Drug Bureau, made an affidavit for search warrant before the trial court. He there alleged that on August 8, 1969, he had purchased without prescription a number of green and white dexamyl spansules from the Grimmett Medical Clinic, located on Highway 19 North, through Pat Kimbal, a nurse at the clinic, and that on December 3, 1969, he again purchased, without prescription from Pat Kimbal, who again stated that Dr. Grimmett would sign a prescription later, one plastic medical vial containing 24 white round scored amphetamine pills and a plastic medical vial containing 30 Smith Kline and French Dexamil capsules of the 5 milligram type, a class "B" narcotic, the sale of such narcotics, depressants etc., being a violation of law. Based upon the affidavit the court issued a search warrant to search the premises and to seize all books and accounts, records, inventory sheets, bills of lading, invoices, and records of drug and medicine purchases for sales and to bring such narcotics, depressants and stimulants, books of accounts, records, inventory sheets, bills of lading, invoices, and record of drug and medicine purchases and sales before the court.

After serving the search warrant, Sergeant Atkinson arrested both Pat Kimbal and appellant and seized 1,812,-976 units of drugs and medicines. Of this amount only 656,645 units were controlled drugs under the Drug Abuse Control Act. Hal McKay, a Texas pharmacist, estimated the value of all the drugs seized, including those subject to purchase at any grocery store, at $79,-372.83, the controlled drugs at $13,437.12, and the narcotics at seventy-five cents.

In contending that the search warrant was invalid and that the evidence gained thereby should be suppressed, appellant asserts that there was no statute authorizing its issuance. The State contends that the issuance of the search warrant was authorized by the common law, by Arkansas Constitution Art. 2, § 15 and by Ark. Stat. Ann. § 82-2109(2) and § 82-2105(A) (Supp. 1971).

In discussing the issues here, it must be remembered that prior to *Mapp* v. *Ohio,* 367 U. S. 643, 61 L. ed 2d 1081, 81 S. Ct. 1684, 84 A. L. R. 2d 933 (1961), Arkansas had not adopted the exclusionary rule with reference to evidence illegally obtained by the State through its duly elected or appointed officers. See *Clubb* v. *State,* 230 Ark. 688, 326 S. W. 2d 816 (1959), where this court had given notice that admissibility of such evidence would be reconsidered. Because of this court's rulings that such evidence was admissible, the Legislature had little or no reason to consider what evidence or articles should be susceptible or reachable by search warrant. At the time this case arose, we had statutes authorizing the issuance of search warrants for property lost by wreck or rising waters, Ark. Stat. Ann. § 21-315; for cruelty to animals, Ark. Stat. Ann. § 41—423; for cruelty to children, Ark. Stat. Ann. § 41-1110; for gambling devices, Ark. Stat. Ann. § 41-2009 and § 41-2010; for enticement of female to house of ill fame, Ark. Stat. Ann. § 41-3216; for enticement of female under 18 years to any place for immoral purposes, Ark. Stat. Ann. § 41-3218; for machine guns, Ark. Stat. Ann. § 41-4515; for stolen or embezzled property, Ark. Stat. Ann. § 43-201, § 43-202 and § 43-204; for liquor law violations, Ark. Stat. Ann. § 48-1107; and for cases involving liquified petroleum gas, Ark. Stat. Ann. ·

§ 53-733. None of these statutes authorize the issuance of the warrant here involved.

Article 2, § 15 of the Constitution of Arkansas provides:

"The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

This is obviously a limitation upon the power of government and not an authorization for the issuance of search warrants. See *State ex rel Streit* v. *Justice Court et al,* 45 Mont. 375, 123 P. 405 (1912), *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 11 A. 2d 863 (1940), and *White* v. *Wagar,* 185 Ill. 195, 57 N. E. 26 (1900).

The search warrant was not known to the early common law. Lord Coke denied its legality. However in *Entick* v. *Carrington,* 19 How. St. Tr. 1030, 95 Eng. Rep. 807 (1765), it was recognized that the issuance of search warrants for stolen goods had become a part of the common law by "imperceptible practice." The *Entick* case is discussed at length, together with the history preceding the decision, in *Boyd* v. *United States,* 116 U. S. 616, 29 L. ed. 746, 6 S. Ct. 524 (1885). With reference to the use of search warrants by the common law, Justice Bradley in the *Boyd* case stated:

". . . [T]he seizure of stolen goods is authorized by the common law; and seizure of goods forfeited for a breach of the duties payable on them, has been authorized by English statutes for at least two centuries past; . . ."

The earliest such statute, 12 Car. 2, c. 19, cited by Justice Bradley as authorizing the issuance of search warrants for contraband, was passed in the year of 1662. In determining the portion of the laws of England that should

be made applicable to the laws of this State, Ark. Stat. Ann. § 1-101 (Repl. 1956), provides:

> "The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply the defects of the common law made prior to the fourth year of James the First (that are applicable to our own form of government), of a general nature and not local to that kingdom, and not inconsistent with the Constitution and laws of the United States or the Constitution and laws of this State, shall be the rule of decision in this State unless altered or repealed by the General Assembly of this State."

The fourth year of the reign of James the First began on March 24, 1607, and corresponds to the founding of Jamestown. Consequently we know of no act of Parliament having to do with the seizure of contraband prior to that date. Thus we must conclude that there is no common law authority in this State for the issuance of a search warrant for contraband.

Other states, with similar prohibitions on unreasonable searches and seizures, that have had occasion to consider the issue, have held that issuance of a warrant not authorized by law is an unreasonable search and seizure. See *State ex rel King* v. *District Court et al*, 70 Mont. 191, 224 P. 862 (1924), and *State* v. *Wills*, 91 W. Va. 659, 114 S. E. 261, 24 ALR 1398 (1922).

The State here relies upon both Ark. Stat. Ann. § 82-2105(a) and § 82-2109(2) as authority for issuance of the warrant involved. The first section provides:

> "§ 82-2105(a) The following are hereby declared to be contraband and shall be seized and forfeited without warrant by a duly authorized agent of the State Board of Health whenever he has reasonable grounds to believe they are:
>
> (1) A depressant or stimulant drug with respect to which a prohibited Act . . . has occurred, . . ."

Ark. Stat. Ann. § 82-2109 provides:

> "Any officer or employee of the State Health Department designated by the State Health Officer to conduct examinations, investigations, or inspections under this Act relating to depressant or stimulant drugs or to counterfeit drugs may, when so authorized by the State Health Officer:
>
> (1) . . .
>
> (2) Execute and serve search warrants and arrest warrants; . . ."

As can be seen the literal language of neither statute authorizes the issuance of a search warrant. The State, though, suggests that we should read such authorization into the statutes by implication.[1] In doing so the State overlooks the rule that a statute at variance with the common law must be strictly construed. In *State* v. *Certain Contraceptive Materials, supra,* with reference to construction of statutes relating to issuance of search warrants, it was said:

> "Where search and seizure has been extended by statute to cases in which the property sought has been used as a means of committing or is possessed with the intent to use it as the means of committing a criminal offense, the use of the process may not be extended by construction to any case not clearly covered by the statute. 24 R. C. L. 716 *State ex rel. Streit* v. *Justice Court,* 45 Mont. 375, 123 Pac. 405; *People ex rel. Simpson Co.* v. *Kempner,* 208 N. Y. 16, 101 N. W. 794. Such search warrants partake of the nature of criminal process, are drastic in their nature and it is the general rule that statutes authorizing them must be strictly construed. 56 C. J. 1160, 1184; United States (C. D. A.) 284 Fed. 208, 212. . ."

---

[1]A housing code authorizing a search without a warrant was held invalid in *Camara* v. *Municipal Court,* 387 U. S. 523, 87 S. Ct. 1727, 18 L. ed 2d 930 (1967). A warrant issued by an officer involved in the investigative process was held invalid in *Coolidge* v. *New Hampshire,* 403 U. S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).

In *State ex rel Streit* v. *Justice Court et al,* 45 Mont. 375, 123 P. 405 (1912), after holding that the use of a search warrant could not be extended by construction of a statute, that court pointed out that a search warrant ". . . is a sharp and heavy police weapon to be used carefully, lest it wound the security or liberty of the citizen."

From the foregoing discussion, it follows that there was neither statutory[2] nor common law authorization for the issuance of the search warrant involved. Consequently the search warrant was unlawfully issued and the evidence acquired thereby should have been suppressed.

Reversed and remanded.

HARRIS, C. J., and FOGLEMAN and JONES, JJ., concur.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result reached by the majority, on rehearing, because I am now of the opinion that the drugs and merchandise seized were not contraband, and it was not illegal for the doctor, a dispensing physician, to possess them. See Ark. Stat. Ann. §§ 82-2107 (a) (5), (c); 82-2105 (a) (Supp. 1971). Furthermore, I do not think that there was authority for a warrant to seize the books and records, although I think there is ample authority for inspecting and copying them. Ark. Stat. Ann. § 82-2107(e). My views on the subject are expressed in my concurring opinion in *Ferguson* v. *State,* 249 Ark. 138, 458 S. W. 2d 383, wherein I pointed out that there was no common law or statutory authority for the issuance of a warrant to search for mere evidence. See, also, my concurring opinion in *Montgomery* v. *State,* 251 Ark. 645 (1971), 473 S.W. 2d 885.

The constitutional question raised here was not reached by the majority in *Ferguson.* In view of the fact that the drugs and medicine were not contraband and the books and records were at best evidentiary material,

---

[2]Subsequent to the warrant here involved, the Legislature, by Act 123 of 1971, has provided rather comprehensive authority for the issuance of search warrants.

this court should not consider the constitutional question treated by the majority in the substituted opinion. We have said for more than 75 years that courts do not and should not pass upon constitutional questions unless the answers to those questions are so *necessary* to a determination of the case that it cannot otherwise be decided. *Missouri Pacific Ry. Co.* v. *Smith,* 60 Ark. 221, 29 S. W. 752; *Porter* v. *Waterman,* 77 Ark. 383, 91 S. W. 754; *Smith* v. *Garretson,* 176 Ark. 834, 4 S. W. 2d 520; *Honea* v. *Federal Land Bank of St. Louis,* 187 Ark. 619, 61 S. W. 2d 436; *Satterfield* v. *State,* 245 Ark. 337, 432 S. W. 2d 472; *County of Searcy* v. *Stephenson,* 244 Ark. 54, 424 S. W. 2d 369; *Mobley* v. *Conway County Court,* 236 Ark. 163, 365 S. W. 2d 122; *Rome* v. *Ahlert,* 231 Ark. 844, 332 S. W. 2d 809. We have even said that where litigation is disposed of without reaching constitutional questions, anything said on the constitutional point would be pure dictum [*Bell* v. *Bell,* 249 Ark. 959 (February 8, 1971), 462 S. W. 2d 837]; that where the case can be disposed of without determining the constitutional question, it is our *duty* to do so (*Herman Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S. W. 2d 487); that constitutional questions are *never* decided unless necessary (*Little Rock Road Machinery Co.* v. *Jackson County,* 233 Ark. 53, 342 S. W. 2d 407); and that constitutional questions are not decided unless the case cannot be disposed of on any other ground (*Bailey* v. *State,* 229 Ark. 74, 313 S. W. 2d 388, cert. denied 358 U. S. 869, 79 S. Ct. 101, 3 L. Ed. 2d 101).

Our invariable rule was founded upon the language of Judge Cooley quoted in *Missouri Pacific Ry. Co.* v. *Smith,* 60 Ark. 221, 29 S. W. 752. A part of that quotation follows:

In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a

case arises which cannot be disposed of without considering it, and when, consequently, a decision upon such question will be unavoidable.

There is no reason why we should decide, in this case, the constitutional question arising from lack of statutory authority for a warrant to search for goods illegally possessed. We should adhere to our unvarying rule.

I am authorized to state that Mr. Justice Jones joins in this opinion.