## Case No. 13,548.

### In re STROUSE.

[1 Sawy. 605; [1] 11 Int. Rev. Rec. 182.]

District Court, D. Nevada. May 19, 1871.

INTERNAL REVENUE—PRODUCTION OF BOOKS—DIS-
CLOSURES—HOW PROTECTED—CONSTI-
TUTIONAL LAW.

. 1. Proceedings under the 14th section of the revenue act to compel the production of books, and giving of evidence before an assessor, are civil, and not criminal.

2. The examination of the books of a person under that section. is not an infringement of article 4 of amendments to the constitution of the United States, protecting persons from unreasonable searches, etc.

[Cited in Re Platt, Case No. 11,212.]

3. Disclosures so made, are protected by the act of February 25, 1868, and cannot be used against the person making them before any court or officer of the United States.

4. The person summoned before the assessor, must not only produce his books, but must submit them to examination, and testify concerning entries therein.

.5. Section 14 of the act of June 30, 1864, as amended by section 9 of the act of July 13, 1866 (14 Stat. 101), construed.

Attachment for contempt in refusing to permit examination of books by assessor of internal revenue, and refusing to testify before the assessor. in pursuance of the provisions of the internal revenue act.

Wm. S. Wood, U. S. Dist. Atty., for the United States.

H. K. Mitchell, for respondent.

HILLYER, District Judge. In this case Mark Strouse was summoned before the assessor to give testimony and produce his books relating to his business between the first day of May, A. D. 1869, and the thirtieth day of November of the same year. The proceeding was taken under the 14th section of the act of congress of June 30. 1864, as amended by section 9 of the act of July 13. 1866 (14 Stat. 101).

At the time and place designated in the summons the respondent. Strouse, appeared with his books, but refused to permit any examination of them by the assessor, or to answer questions, upon the alleged ground that the books, if received in evidence, would criminate him, or would furnish a link in a chain of testimony which might criminate him. The assessor then applied for an attachment against said Strouse, by virtue of which he was brought before the judge of the district court and a hearing had.

The respondent asks to be discharged without compliance with the summons of the assessor upon three grounds: (1) That his answers and books would tend to criminate him. (2) That the examination of his books would infringe that article of the constitution of the United States which protects the people

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

from unreasonable searches and seizures of their persons, houses and effects. Article 4, Amendments. (3) That he can only be compelled under the 14th section to produce his books, and cannot be required to submit them to the inspection of the assessor, or to testify from them.

As to the first ground it is true that, under the constitution of the United States, no man can be compelled to be a witness against himself in a criminal case. Article 5, Amendments. But it has been held by Judge Lowell of the Massachusetts district, and I think correctly, that this is not a criminal, but a civil proceeding. In re Chadwick. [Case No. 2,570]. The respondent is charged with no crime. He has refused to be examined because he believed the examination to be illegal, and it is not to be presumed that any judge will punish a person for the assertion of what he, in good faith, believes to be a legal right, though shown finally to be an error. The law authorizes the assessor to summon the respondent before him to answer questions touching his returns and assessments.

It is no more a "criminal case" than summoning a witness to testify, or a bankrupt to appear before a register or judge and answer interrogatories. The answers of Mr. Strouse may be testimony which will increase his tax and thus be against himself, but he is a witness against himself in a civil proceeding having no element of a "criminal case."

This being so it was argued that the testimony given might be used against the witness on some future trial for the commission of a crime. I think this objection is no longer of any force since the passage of the act of congress of February 26, 1868 (15 Stat. 37), for the protection of persons making disclosures as parties, or testifying as witnesses. This act provides that disclosures and evidence obtained by means of any judicial proceeding from any party or witness, shall not be used against him in any manner before any court of the United States or any officer thereof. Judge Underwood. of the district of Virginia, holds the disclosures and evidence given under section 14, to be fully protected by this act. In re Phillips [Case No. 11,097]. And see, also, People v. Kelly, 24 N. Y. 83; and In re Meador & Bros. [Case No. 9,375]. Again, the constitutional protection applying only to criminal cases, congress would have power to change the old rule of evidence and require a witness to give evidence in a civil case, even though it did tend to criminate himself. This testimony, not being given voluntarily, might upon a trial of the witness for the crime. be excluded upon another well known rule of evidence regarding admissions.

Second. Upon the second ground that this requirement to produce the books is an unreasonable search, it need only be remarked

that the fourth amendment, supposed to be violated, like the clause of the fifth referred to above, is applicable to criminal cases only. The opinion of Judge Erskine in the Case of the Meadors cited above, leaves nothing to be said on this point.

Third. The third point is upon the construction of the 14th section. It was contended on the argument that the person summoned when he appeared and "produced" the books mentioned in the summons, had complied with the law, and could not be required to submit them to the inspection of the assessor, or to exhibit particular items to him. The language of the section is, * * * "it shall be lawful for the assessor to summon such person, his agent, or other person having possession, custody or care of books of accounts, containing entries relating to the trade or business of such person, or any other person he may deem proper, to appear before such assessor and produce such book, at a time and place therein named, and to give testimony or answer interrogatories under oath." * * * It is too plain for argument that no effect would be given to this language if the person summoned might, after producing the books, refuse to permit any examination of, or testify as to entries in them. The command of a subpœna duces tecum is that the witness "bring with" him certain described books or papers, but who ever heard of such witness contending that he had only to bring the books with him and need not exhibit or testify from them. The bankrupt act gives the court power in certain cases "to compel the production of books and papers," and I have never heard of a witness being excused from exhibiting the books or testifying to entries in them upon the ground that the law gave power to compel only the "production" of the books. In all these cases the only reason for producing the books is to use them as evidence, so far as they are competent upon the inquiry being made. This section is remedial, not penal, and must be liberally construed so as fairly to carry out the intention of the lawmaker. To do this, the books must not only be produced, but the entries relating to the trade or business of the respondent must be exhibited and proper questions concerning them answered. It is not doubted that the assessor will discharge this delicate and somewhat disagreeable duty with all proper regard for the natural feeling of repugnance which every citizen engaged in business has, to disclosing his business affairs to third persons. The revenue law denounces heavy penalties against any assessor who shall be guilty of wilful oppression in the discharge of his office, and it must be presumed that he will do his duty—no more and no less.

It is ordered: That the said Mark Strouse, in obedience to the summons of the assessor, W. F. Myers, appear before said assessor forthwith, and answer under oath or affirmation concerning the trade or business of said Strouse, from May 1, 1869, to November 30, 1869, and give evidence according to his knowledge respecting his liability as a person subject to an excise duty or tax under the internal revenue laws of the United States; and, also, that he produce to the said assessor all books of accounts containing entries of purchases and sales relating to his trade or business, from May 1, 1869, to November 30, 1869, and exhibit such entries to said assessor, and answer touching the same, fully.

It is further ordered: That upon complying fully and fairly with the foregoing order, the said Mark Strouse be discharged from arrest. [The clerk, upon receipt of his fees therefor, will deliver a certified copy of this order to W. F. Myers, assessor.] [2]