THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT SIMPSON COMPANY, Respondent, *v.* OTTO KEMPNER, Individually and as Chief Magistrate of the Second Division of the City of New York, et al., Appellants.

Search warrant — title to or right to possession of property taken under search warrant cannot be tried on return thereto — writ of prohibition properly issued.

1. The statutes and authorities relating to and regulating the issuance and use of search warrants collated, examined and applied.

2. A search warrant cannot be issued for any purpose except those stated in the Code of Criminal Procedure (§ 792). Its legitimate use is and always has been to aid in the detection and punishment of crime and it has no relation whatever to civil process or civil trials. There is nothing in any of the provisions of the Code of Criminal Procedure that authorizes a trial of the title to or right to possession of the property taken under the warrant.

3. Where property voluntarily or by aid of a search warrant comes into the possession of a magistrate or court from the person or from the possession of one charged with crime, and such person is thereafter convicted of having stolen the property that is so in the possession of the magistrate or court, from the person claiming to be the owner thereof, and there are no third persons claiming such property, it is proper practice to order the property delivered to the person who, as appears by the testimony taken upon the trial, is the owner thereof.

4. Where property has been taken by a search warrant from the possession of a third person, and there is a controversy between the person from whom it is claimed that the property was stolen and the person from whom the possession of the property was taken by the search warrant as to which is entitled to the possession thereof, a question is presented that cannot be determined upon a criminal process. It is a matter wholly between the contending parties and of no direct concern to the state. It must be determined in a civil action, in which the parties are by the Constitution entitled to notice and a hearing and, if demanded, to the trial of the issue by jury.

5. Under a search warrant, issued by a magistrate, alleged stolen property was found in the possession of and taken from a corporation engaged in business as a licensed pawnbroker which at the time

of the return to said warrant appeared by counsel and asserted its right to the possession of the said property and its constitutional authority to have its property rights therein, and the possession thereof, determined in a civil action. The magistrate threatened to hear and determine the validity of the pawnbroker's alleged lien, and in the event of its being determined upon such hearing to be invalid, that the said property would be delivered to whoever was found to be the owner and entitled to the possession thereof. *Held,* that an absolute writ of prohibition commanding the magistrate to refrain from trying and determining the title to the property was properly issued.

*People ex rel. Simpson Co.* v. *Kempner,* 154 App. Div. 674, affirmed.

(Argued March 3, 1913; decided March 25, 1913.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 27, 1913, which reversed an order of Special Term denying a motion for a writ of prohibition and granted said motion as a matter of law and not as matter of discretion.

The facts, so far as material, are stated in the opinion.

*James C. Cropsey,* District Attorney (*Hersey Egginton* and *John M. Perry* of counsel), for appellants. The proceeding before the magistrate, which it is sought in this action to prohibit, in no way affects title. (*Houghton* v. *Bachman,* 47 Barb. 388; *Simpson* v. *St. John,* 93 N. Y. 363.) The provisions of the Code of Criminal Procedure regarding the disposition of the custody of property seized under a search do not violate the constitutional rights of the respondent. (*People* v. *Adams,* 176 N. Y. 351; *Matter of Curry,* 25 Hun, 321; *Matter of McAdam,* 7 N. Y. Supp. 454; *Happy* v. *Mosher,* 48 N. Y. 313; *Arnold* v. *Steeves,* 10 Wend. 514; *Bellows* v. *Shannon,* 2 Hill, 86.)

*Franklin Taylor* for respondent. The threatened adjudication of the relator's lien was in violation of the constitutional provision as to due process of law. (*Hornsby* v. *U. S.,* 10 Wall. 242; *Havemeyer* v. *Superior*

2

*Court,* 84 Cal. 327; *Lowry* v. *Rainwater,* 70 Mo. 152; *White* v. *Ward,* 157 Ala. 345; *Bennett* v. *Davis,* 90 Me. 102; *Eustis* v. *City of Henrietta,* 90 Tex. 468; *Fisher* v. *McGuire,* 1 Gray, 1; *Hibbard* v. *People,* 4 Mich. 125; *Ward* v. *Boyce,* 152 N. Y. 191; *People ex rel. Witherbee* v. *Supervisors of Essex,* 70 N. Y. 228; *Matter of Hatch,* 11 J. & S. 89; *Reynolds* v. *Stockton,* 140 U. S. 254; *Carpenter* v. *Strange,* 141 U. S. 87; *Louis* v. *Brown Township,* 109 U. S. 162; *Cromwell* v. *County of Sac,* 94 U. S. 351.) The adjudication of the civil property rights of an innocent third party, by search warrant proceedings, violates the constitutional provision as to trial by jury. (Cooley on Const. Lim. [7th ed.] 430, 431; *Bell* v. *Clapp,* 10 Johns. 283.) It is not the function of a search warrant to interfere with the possession of property by innocent third parties claiming rights therein in the absence of a pending criminal prosecution. (*Robinson* v. *Richardson,* 13 Gray, 454; *Lippman* v. *People,* 175 Ill. 111; *Commonwealth* v. *Hinds,* 145 Mass. 182; Chitty on Crim. Law [5th Am. ed.], 65; Cooley on Const. Law [6th ed.], 369; *People* v. *Holcomb,* 3 Park. Cr. Rep. 656; *Carey* v. *Sheets,* 67 Ind. 375.)

CHASE, J. The relator is a domestic corporation engaged in business as a licensed pawnbroker. On and prior to January 26, 1912, it was in possession of two diamond rings which it held as security for a loan of fifteen dollars made to the person who delivered the rings to it. A woman claims that she is the owner of said rings and that they were stolen from her by her maid and pawned by said maid to the relator. No one has been convicted of the alleged theft. On January 27 an information was filed with a magistrate charging said maid with the crime of grand larceny in stealing said rings and a warrant was issued for her arrest, but it was not executed because she was then in custody serving a sentence after pleading guilty to a charge of committing another crime.

On January 26 said woman claiming to be the owner of the rings submitted to a magistrate an affidavit, upon which he issued a search warrant, in the form provided by the Code of Criminal Procedure, directing that search be made for said rings. The warrant was served January 27, and the rings were found and taken by the officer serving the warrant from the relator, and he held them for production before said magistrate upon the return of the warrant. A voluntary and informal notice was given to the relator, by the officer serving the warrant, of the time when the return to said warrant would be made to the magistrate. At the time mentioned the relator appeared by counsel and asserted its right to the possession of said rings and its constitutional authority to have its property rights in said rings and the possession thereof determined in a civil action.

The magistrate threatened to hear and determine the validity of the relator's alleged lien on the property taken pursuant to the search warrant, and in the event of its being determined upon such hearing that the relator's alleged lien is invalid that the said property would be delivered to whoever was found to be the owner and entitled to the possession thereof. An adjournment was then taken. Application was thereupon made for an absolute writ of prohibition, which was denied by the Special Term and granted upon appeal to the Appellate Division.

A search warrant is an order in writing, in the name of the people, signed by a magistrate, directed to a peace officer, commanding him to search for personal property and bring it before the magistrate. (Code of Criminal Procedure, § 791.)

It may be issued upon one of three grounds: (1) When the property was stolen or embezzled; (2) when it was used as the means of committing a felony; (3) when it is in the possession of any person with the intent to use it as the means of committing a public offense. (Code Criminal Procedure, § 792.)

In each of the cases last mentioned it is provided from whom the property may be taken under the warrant.

A search warrant cannot be issued for any purpose except as stated. Its legitimate use is and always has been to aid in the detection and punishment of crime. As such it has been in common use since the days of Lord Coke. It was mentioned by him in the Institutes (Book 4, pp. 176, 177). Referring to search warrants he says: "For justices of the peace to make warrants upon surmises, for breaking the houses of any subjects to search for felons, or stolen goods, is against Magna Charta." Sir Matthew Hale in his History of the Pleas of the Crown (Vol. 2, p. 149) does not fully agree with Lord Coke, but explains the business of a search warrant and the purposes for which it is used, and says: "I thought fit to insert this business in this place.   1. Because it is a business preparatory to the discovery of felons, and preparing evidence against them, and to the helping of persons robbed to their goods.   2. Because it is found by experience of great use and necessity, especially in these times, where felonies and robberies are so frequent.   And therefore this means of discovering them is now grown common and usual, much more than in antient times; and if it should be disused or discountenanced, it would be of public inconvenience; and therefore I can by no means subscribe to that opinion of my Lord Coke's, 4 Inst. cap. 31, p. 176, as it is there generally set down, 'That justices of peace have no power upon a bare surmise to break open any man's house to search for a felon or stolen goods either in the day or night.'"

Referring to the goods found, Sir Matthew Hale says (p. 151): "As touching the goods brought before him, if it appears they were not stolen, they are to be restored to the possessor; if it appears they were stolen, they are not to be delivered to the proprietor, but deposited in the hands of the sheriff or constable to the end the party robbed may proceed by indicting and convicting the offender to have

restitution." (See, also, Burns' Justices of the Peace, pp. 176, 179; Chitty's Criminal Law [5th Amer. ed. from 2nd London ed.], vol. 1, p. 67.)

There were formerly three means of restitution of goods to the party from whom they were stolen: (1) By appeal of robbery or larceny. If the party were convicted thereupon, restitution of the goods contained in the appeal was to be made to the appellant, for it is one of the ends of that suit. (2) By the statute 21 Henry VIII, chap. 11. And (3) by the course of the common law. But after the felon is convicted it can be no color of crime to take his goods again when he (the owner) finds them, because he hath pursued the law upon him and may have his writ of restitution if he pleases. (Burns' Justices of the Peace, vol. 4, pp. 111, 115; Hale's Pleas of the Crown, vol. 1, pp. 538, 546.)

After goods were taken into the possession of the court, restitution to the owner was at least to an extent dependent upon his prosecuting the thief. The prospect of restitution was thus made an incentive to the performance of public duty in bringing the criminal to justice. Until the person charged with the theft was convicted or acquitted the courts would not sustain an action even by a third person for the possession of the goods.

It thus appears with reasonable certainty that in England and the American colonies the search warrant was a process used preparatory to the discovery of felons, in preparing evidence against them and to help persons robbed to recover their goods, and not to try the title of or right to the possession of goods and chattels.

There did not exist at the time of the adoption of our State Constitution in 1777 any right by the common or statute law of England and Great Britain to try the title to goods and chattels before a magistrate upon the return of a search warrant. Such right did not form a part of the law of the colony of New York on the 19th day of April in the year of our Lord one thousand seven hundred and seventy-five.

It appears in *Bell* v. *Clapp* (10 Johns. 263) that search warrants in accordance with the English practice were (1813) issued and enforced by the courts in this state. That practice doubtless continued as we have not found a statute in this state providing generally for search warrants prior to the Revised Statutes of 1829 (Part 4, title 7, chap. 2, art. 3, §§ 25 to 28 inclusive). (See, also, §§ 30 to 34 inclusive.)

A century ago it was deemed necessary for the purpose of preserving the civil remedy of a person injured or aggrieved by a felony, to provide by statute that "in no case whatever shall the right of action of the party injured be deemed taken, or adjudged to be merged in the felony or in any manner affected thereby." (Revised Laws, 1813, vol. 1, p. 499, sec. 20; Revised Statutes, part 3, tit. 1, ch. 4, sec. 2; Code of Procedure, 1857, sec. 7; Code of Civil Procedure, sec. 1899.)

The basis for a search warrant under the Revised Statutes is a complaint upon oath that "personal property has been stolen or embezzled, and that the complainant suspects that such property is concealed in any particular house or place."

The Revised Statutes mentioned remained in full force until repealed by the Code of Criminal Procedure, which was adopted by chapter 442 of the Laws of 1881, and sections 791 to 810 and 685 to 689 inclusive of that Code were then enacted.

The grounds upon which a search warrant was authorized by the Revised Statutes were somewhat enlarged by the Code. The basis for the search warrant prescribed by the Code is, however, the same in general character as stated in the Revised Statutes and as established by the old English practice. .

A search warrant under the Revised Statutes and under the Code, like the search warrant under the old practice, is in the nature of a criminal process and we repeat that its purpose is to aid in the detection and pun-

ishment of crime.    It has no relation whatever to civil process or civil trials.

Section 807 of the Code of Criminal Procedure is new and provides: "If the grounds on which the warrant was issued be controverted, the magistrate must proceed to take testimony in relation thereto." This section, although new in form, is in accordance with the practice as it has always existed. The grounds on which a search warrant may be issued are stated in section 792; and it is provided in section 793 that "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched." Any person interested may controvert there being probable cause for issuing the warrant. The magistrate may take further testimony relating thereto, and if he determine such controversy in favor of the person from whose possession the property was taken, he should by order return such property to him. (§ 809.)

There is nothing in any of the provisions of the Code of Criminal Procedure that authorizes a trial of the title to or possession of the property taken under the warrant.

In *Robinson* v. *Richardson* (13 Gray [Mass.], 454, 456), the court in 1859 say: " Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings, or for the maintenance of any mere private right; but their use was confined to cases of public prosecutions, instituted and pursued for the suppression of crime or the detection and punishment of criminals. Even in those cases, if we may rely on the authority of Lord Coke, their legality was formerly doubted, and Lord Camden said that they crept into the law by imperceptible practice. But their legality has long been considered to be established on the ground of public necessity, because without them felons and other malefactors would escape detection. (*Entick* v. *Carrington*, 19 Howell's State

24    People ex rel. Simpson Co. *v.* Kempner.

[208 N. Y.]                Opinion, per Chase, J.                [Mar.,

Trials, 1067; 1 Chitty's Crim. Law, 64.)   *   *   *   All searches, therefore, which are instituted and pursued upon the complaint or suggestion of one party into the house or possessions of another, in order to secure a personal advantage, and not with any design to afford aid in the administration of justice in reference to acts or offenses in violation of penal laws, must be held to be unreasonable, and consequently under our constitution unwarrantable, illegal and void."

The case of *Simpson* v. *St. John* (93 N. Y. 363) did not hold to the contrary.   It was in that case held, as it was held in colonial days, that where goods are in the custody of a criminal court pending the prosecution of the person alleged to have stolen them, their retention is within the police power, although a third person asserts his title and right to the immediate possession of such goods.   The court, in the *Simpson* case, sustained the defendant, the property clerk of the magistrate, before whom the criminal proceeding was pending, in his refusal to deliver the goods to the sheriff on his demand, pursuant to papers in his possession as sheriff, in an action by a third person to recover possession of the goods.

Where property voluntarily or by aid of a search warrant comes into the possession of a magistrate or court from the person or possession of one charged with crime, and such person is thereafter convicted of having stolen the property that is so in the possession of the magistrate or court, from the person claiming to be the owner thereof, and there are no third persons claiming such property, it has doubtless been the practice, so long as there is any record of it, to order the property delivered to the person who, as appears by the testimony taken upon the trial, is the owner thereof.   Such an order is analogous to the obsolete writ of restitution.

When, however, the property has been taken by a search warrant from the possession of a third person, and there is a controversy between the person from whom it

is claimed that the property was stolen and the person from whom the possession of the property was taken by the search warrant as to which is entitled to the possession thereof, a question is presented that cannot be determined upon a criminal process. It is a matter wholly between the contending parties and of no direct concern to the state. It must be determined in a civil action, in which the parties are by Constitution entitled to notice and a hearing and, if demanded, to a trial of the issue by jury. (*Modern Loan Co.* v. *Police Court*, 12 Cal. App. 582.)

The order should be affirmed, without costs.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, COLLIN and HOGAN, JJ., concur.

Order affirmed.