### PAPPAS v. LUFKIN, Collector of Customs.

(District Court, D. Massachusetts. February 23, 1927.)

#### No. 3526.

1. Courts ⟨⇒⟩497—Property is beyond jurisdiction of court with co-ordinate jurisdiction only when in custody of court of competent jurisdiction on appropriate proceedings.

It is only when property is in custody of court of competent jurisdiction on appropriate proceedings that it is beyond jurisdiction of other courts with co-ordinate jurisdiction.

2. Searches and seizures ⟨⇒⟩5—Wrongful seizure cannot support proceeding in rem.

Proceeding in rem cannot stand on a wrongful seizure.

3. Courts ⟨⇒⟩497—Federal court may seize liquor after state court returned it to owner, on holding proceeding was predicated on wrongful seizure (Tariff Act 1922, § 595 [Comp. St. § 5841h15]).

Where state court, having custody of liquor seized by state officers, had, prior to seizure by customs officers under Tariff Act 1922, § 595 (Comp. St. § 5841h15), returned liquor to owner in accordance with court order, there was no conflict of jurisdiction preventing federal court from exercising right to take liquor into custody on proper proceeding, and judgment of state court that proceedings were predicated on wrongful seizure cannot be collaterally attacked in proceeding in federal court for return of liquor.

4. Constitutional law ⟨⇒⟩48—Act of Congress should be construed, if possible, to avoid unconstitutionality.

Act of Congress should be so construed as to avoid unconstitutionality whenever possible.

5. Searches and seizures ⟨⇒⟩3(10)—Commissioner's determination of probable cause for search warrant is conclusive, unless arbitrary.

Determination of commissioner as to existence of probable cause, justifying search warrant, is conclusive, unless clearly arbitrary.

**6. Customs duties ⚖➝126—Officer's affidavit of seeing liquor on which duty was not paid unloaded at certain building held sufficient to authorize warrant (Const. Amend. 4; Tariff Act 1922, § 595 [Comp. St. § 5841h15]).**

Affidavit of inspector of customs of examining liquor in police station on which duty had not been paid, and seeing liquor loaded onto automobile trucks and unloaded therefrom into certain building, *held* sufficient, under Const. Amend. 4, to authorize warrant for seizure under Tariff Act 1922, § 595 (Comp. St. § 5841h15).

At Law. Petition by Nick Pappas against Wilfred W. Lufkin, Collector of Customs, seeking a return of liquor seized by customs officers. Petition dismissed.

Jasper Johnson, of Boston, Mass., for plaintiff.

Clifford H. Byrnes, Asst. U. S. Atty., of Boston, Mass., for defendant.

BREWSTER, District Judge. On August 21, 1926, there was on the premises of the petitioner, Nick Pappas, a large quantity of intoxicating liquor. It was then and there seized by customs officers holding a search warrant issued under section 595 of the Tariff Act of 1922 (Act Sept. 21, 1922, c. 356, 42 Stat. 983 [Comp. St. § 5841h15]), and is now in the possession of the respondent as collector of customs. This petition is brought by Pappas, who claims to be the owner of the liquor, and who seeks a return thereof on two principal grounds:

(1) That at the time of the seizure by the federal officers the liquor was in contemplation of law within the custody of the state court, which had previously assumed jurisdiction.

(2) That the federal search warrant upon which the seizure was made was invalid.

The facts material to the first issue are largely matters of record and not disputed. It appears that on June 29, 1923, the liquor was seized by a police officer of the town of Peabody, acting under a search warrant issued by the district court of Peabody. The officer duly made a return of the search warrant to the court issuing it. That court found that the value of the property taken was over $1,000, and, pursuant to the laws of Massachusetts (G. L. c. 138), forfeiture proceedings were made returnable to the superior court for the county of Essex. In these proceedings Pappas appeared specially as claimant, and at all times denied the jurisdiction of the state courts. Before any final disposition of the proceedings had been made in the su-

perior court, Pappas addressed to the district court of Peabody a motion in which he alleged that the search and seizure were wholly unlawful and made upon an invalid search warrant. In his motion Pappas asks the district court to amend its records and make such orders as of such former times as law and justice require, adjudicating papers now in the files of said court and purporting to be the complaint and warrant null and void, and to issue its writ of supersedeas annulling and vacating the "notice to serve with notice" which has been improvidently issued, and also to make such other orders in the case as justice may require, and to certify its action forthwith to the superior court for criminal business, sitting at Salem, in and for the county of Essex.

Upon this motion on August 17, 1926, the district court entered an order, the last paragraph of which is significant. It reads as follows:

"Therefore this is to notify the honorable the superior court and all persons interested in these proceedings that all the proceedings taken in the case before said district court were and are null and void, and that the certificate and notice requiring persons to appear in the superior court is without legal force and effect, and is null and void, and that said alleged proceedings were entered in your honorable court without right and without complying with the law in said case made and provided, and should be dismissed therefrom forthwith as entered by mistake, and it is so requested."

[1, 2] This order of the lower court was received and entered on the docket of the superior court on August 18, 1926. On August 17, 1926, the district court entered nunc pro tunc as of June 30, 1923, another order directing the officer who had made the illegal seizure to return to Pappas, the claimant, the liquor then in the custody of the officer. During the intervening time between June 29, 1923, and August 17, 1926, the liquor has been kept at the Peabody police station. Acting upon the order of return, the officer delivered the liquor to the premises of Pappas, where it was on the following day seized by the federal agents, who were not wholly unaware of what had taken place. There was some evidence introduced, and more offered, to show that there existed dehors the record some understanding between the district court and Pappas' counsel that the order of return would not be executed until the superior court had made appropriate entries or orders dismissing the case. It was not until after the

seizure by federal agents that a docket entry dismissing the proceedings was made in the superior court.

I fail to see the materiality of any such arrangements. An adjudication of the court that it had no jurisdiction over the res had been made a matter of record, both in the district court and in the superior court. An appropriate order of return had been issued and executed. Nothing appears on the record of either court to indicate that the return of the liquor was to be delayed. The court had given no such instruction to the officer. But, whatever the understanding, the officer received the order for return and within two or three days arranged with the owner, or his attorneys, for a return at an early hour on the morning of August 20, 1926. With knowledge and acquiescence of the claimant, the liquor was carried to Pappas' garage and the officer's return shows a receipt signed by Pappas for the liquor.

On the face of this record, it is idle to argue that the liquor was still in the custody, actually or constructively, of the state court. Whether or not the district court of Peabody, which issued the warrant, was the proper tribunal to determine in the first instance the validity of the warrant, it had entertained Pappas' motion and had decided that the warrant was void and that all proceedings based thereon were "without legal force and effect" and "null and void," and, having certified the decision to the superior court, nothing was left for the higher court to act upon. Whether any right of appeal from this decision existed, it is not necessary to consider as the government clearly acquiesced in the results. I can see no legal impediment in the way of a prompt and effectual execution by the officer of the order of return. Furthermore, it is only when property is in the custody of a court of competent jurisdiction on appropriate proceedings that it is beyond the jurisdiction of other courts with co-ordinate jurisdiction. Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871. Proceedings in rem cannot stand on a wrongful seizure. The Brig Ann, 9 Cranch, 289, 3 L. Ed. 734; Daeufer-Lieberman Brewing Co., Inc., v. U. S. (C. C. A.) 8 F.(2d) 1.

The state court having decided that the proceedings were not "appropriate" and that they were predicated on a wrongful seizure, the only course open to this court is to accept this judgment as final. It cannot be collaterally attacked in these proceedings. Mutual Reserve F. L. Ass'n v. Phelps, 190 U.

S. 147, 23 S. Ct. 707, 47 L. Ed. 987; Lion Bonding & Surety Co. v. Karatz, supra.

[3] There was therefore no conflict of jurisdiction which would prevent the federal court from exercising its right to take this liquor into custody upon proper proceedings. I come now to the second ground upon which petitioner bases his claim to a return of the liquor, viz. that the warrant upon which the seizure was made was invalid.

It should be noted that the warrant was issued pursuant to section 595 of the Tariff Act of 1922. This section provides that the collector of customs shall be entitled to a search warrant if he "shall have cause to suspect the presence in any dwelling house, store, or other building or place of any merchandise upon which the duties have not been paid, or which has been otherwise brought into the United States contrary to law," and shall "make application, under oath, to  * * * any United States commissioner."

I find that James W. Carr, United States inspector of customs, an officer authorized to make searches and seizures, applied to United States Commissioner Jenney for a warrant to enter and search petitioner's premises for liquor, particularly described as "392 cases Lawson Scotch whisky, 11 cases Peter Dawson Scotch whisky, and 42 cases John De Kuyper gin." Carr made oath that he had cause to suspect that no duties had been paid on the liquor, or that it had been brought into the United States contrary to law, and that the liquor was then on the premises of Nick Pappas, which premises were described as "1½-story frame building, combination dwelling and garage, with basement under building, situate at rear of 133 Hanover street, Peabody, Mass." In support of his application Carr attached thereto and made a part of the record in the case the affidavit of George M. Murphy, which read as follows:

"I, George M. Murphy, on oath depose and say that I am a prohibition agent, assigned to duty with the collector of customs at Boston; that on August 20, 1926, I proceeded to the police station at Peabody, Mass.; that at the said police station I saw a large quantity of foreign liquors upon which duty had not been paid, to wit, whisky and gin; that I checked said liquors and found them to consist of 392 cases of Lawson Scotch whisky, 11 cases of Peter Dawson Scotch whisky, and 42 cases of John De Kuyper gin; that I saw said liquor loaded onto two automobile trucks; that I followed said trucks to the premises of Nick Pappas at 133 Andover street, Peabody,

Mass.; that on said day from the street I saw said liquors unloaded from said trucks into a 1½-story frame building, combination dwelling and garage, with basement under building, in the rear of said 133 Andover street, Peabody."

Both Murphy and Carr appeared before the commissioner and there subscribed and made oath to the affidavits. Petitioner challenged the truth of certain statements contained in Murphy's affidavit, and duly filed with the commissioner a motion to controvert. No action was ever taken on this motion by the commissioner. I assume, without deciding, that the petitioner had a right to controvert the existence of probable cause in the case of a warrant issued under section 595 of the Tariff Act. I also have a deep-seated conviction that, if the right to controvert exists, the motion to controvert should in the first instance be heard by the magistrate issuing the warrant. But in order to expedite matters, and with the consent of all parties, I have received and considered evidence bearing upon the truth of Murphy's affidavit. The only statement which is questioned is his statement "that on said day from the street I saw said liquors unloaded from said trucks into a 1½-story frame building, combination dwelling," etc. The evidence fully satisfies me that Murphy's statement as to what he saw was entirely true. The petitioner gains nothing by his attempted controversion, if his right to controvert be conceded.

[4] But the petitioner still contends that, even if Murphy's affidavit is accepted as true, the warrant and accompanying affidavit do not meet the requirements of the Fourth Amendment to the Constitution that "no warrant shall issue, but upon probable cause." At the outset we are confronted with the necessity of reconciling, if possible, the provisions of section 595 of the Tariff Act of 1922 with the Fourth Amendment. It is a rule of construction, too well established to need citation, that an act of Congress should be so construed as to avoid unconstitutionality wherever possible. This end can be accomplished by holding that the power of the magistrate to issue search warrant under section 595 is subject to the limitations imposed by the Fourth Amendment. While the language of the section may be broad enough to admit the authority, it is inconceivable that Congress intended to empower any magistrate to issue a search warrant in disregard of the requirements of that amendment. Similar acts authorizing the issuance of search warrants to revenue officers have been deemed to be sub-

ject to the amendment. Schencks v. U. S., 55 App. D. C. 84, 2 F.(2d) 185; Wagner v. U. S. (C. C. A.) 8 F.(2d) 581; Ripper v. U. S. (C. C. A.) 178 F. 24; U. S. v. Lai Chew (D. C.) 298 F. 652.

Whether and to what extent the provisions of the Espionage Act (Act June 15, 1917, c. 30, title 11, § 1, 40 Stat. 228 [Comp. St. § 10496¼a]) apply to warrants issued under the Tariff Act are questions of slight importance here. I very much doubt whether the rules of procedure laid down in the Espionage Act apply to customs warrants, so called, except so far as these rules are declaratory of the common law. See U. S. v. Yuck Kee (D. C.) 281 F. 228; Giles v. U. S. (C. C. A.) 284 F. 208; Simpson Co. v. Kempner, 208 N. Y. 16, 101 N. E. 794, L. R. A. (N. S.) 970.

But these considerations become relatively unimportant, in view of the fact that the record shows that the proceedings before the commissioner substantially conformed to all requirements of the Espionage Act.

[5] The only question open is whether the affidavit of Murphy presents sufficient facts to justify the commissioner in finding that probable cause essential to the lawful issue of the search warrant. In this circuit it has recently been held that the determination of the commissioner as to the existence of probable cause is conclusive, unless clearly arbitrary. Gracie v. U. S. (C. C. A.) 15 F.(2d) 644.

[6] The question, therefore, comes down to this: Were there any facts set out in Murphy's affidavit which would justify the conclusion of the commissioner that grounds probably existed for the application for the warrant. There was more than a general statement of an affiant that he believed an offense was being committed. The statements were not hearsay, or made on information and belief, and they were much more than suspicion. In these respects the case at bar is distinguishable from Wagner v. U. S., supra, U. S. v. Lai Chew, supra, and other cases cited by petitioner, where affidavits have been regarded as insufficient.

Murphy's affidavit contained statements of facts which might well have been within the knowledge of affiant and were not successfully controverted.

Although the affidavit is not all that could be desired, I cannot say that the determination of the commissioner as to the existence of probable cause was wholly without warrant. In U. S. v. Bookbinder (D. C.) 278 F. 216, a warrant was held to be lawfully issued on an affidavit that certain described liquor had been smuggled. This decision was affirm-

ed in the Circuit Court of Appeals for the Third Circuit (287 F. 790), and certiorari denied (262 U. S. 748, 43 S. Ct. 523, 67 L. Ed. 1213).

The conclusion I have reached is not necessarily inconsistent with U. S. v. Almeida (C. C. A.) 9 F.(2d) 15, or Brown v. U. S. (C. C. A.) 16 F.(2d) 682, decided Dec. 31, 1926. In the former case the court was dealing with the degree of evidence necessary to warrant a judgment of forfeiture of a vehicle in which the liquor was found, and any observation made on the point was obiter dictum, and in the latter case the majority of the court was dealing with the evidence necessary to support a verdict of guilty against one accused of crime. The amount of evidence, or the degree of proof necessary to warrant forfeiture or conviction, must necessarily be greater than the amount of evidence required to justify a commissioner in finding the existence of probable cause.

I rule, therefore, that the warrant upon which the seizure was made was a valid warrant.

The petitioner has suggested that the search and seizure might be declared invalid by reason of the manner in which the information was obtained upon which Murphy based his affidavit.

The evidence discloses that, while the police officer of Peabody was in the act of loading the liquor onto trucks at the police station, he allowed the federal agents to be present and examine the cases in which the liquor was contained as they were being loaded. The agents did not go out of their way to advertise their official capacity, and it was not known to the representatives of Pappas that they were federal agents until some, or all, of the liquor had been loaded. It does not appear, however, that the agents misrepresented or concealed their identity. They purposely refrained from going upon the premises of Pappas until after a warrant had been secured. I am satisfied from the evidence that the agents at all times exhibited a commendable regard for the constitutional rights of the petitioner in the matter of securing evidence and in obtaining and executing the warrant.

No forfeiture proceedings have been instituted, because the parties agreed that, pending the disposition of this petition, the government would refrain from instituting said proceedings.

An order may be entered dismissing the petition.

Each and every of plaintiff's requests for rulings is denied.