### CAMDEN COUNTY BEVERAGE CO. v. BLAIR, Commissioner of Internal Revenue, et al.

District Court, D. New Jersey.

April 30, 1930.

Walter S. Keown, of Camden, N. J., and Walter H. Bacon, of Bridgeton, N. J., for complainant.

Phillip Forman, U. S. Atty., of Trenton, N. J., and Samuel Cohen, Acting Counsel for Prohibition Administrator, of Newark, N. J., for defendants.

AVIS, District Judge.

The bill is filed in this case by the Camden County Beverage Company (hereinafter called the complainant) against the Commissioner of Internal Revenue, the Prohibition Commissioner, the Prohibition Administrator for New Jersey, and the United States attorney for the district of New Jersey, and alleges that the complainant is the holder of permit NJ–L–51 under the National Prohibition Act and the rules and regulations of the Bureau of Prohibition, and that, under this permit, complainant has operated a brewery in the city and county of Camden, and state of New Jersey, for the production and sale of cereal beverages containing less than one-half of 1 per cent. of alcohol by volume.

The bill further alleges that the complainant has at all times complied with the law in the production of this beverage, and that on January 16, 1930, two prohibition agents broke and made a forcible entry into the plant and property of complainant in the city of Camden aforesaid, and made some seizures of its product; that on January 29, 1930, William J. Calhoun, Prohibition Administrator for the state of New Jersey, gave notice to complainant, in the nature of an order to show cause, returnable on February 18, 1930, why complainant's permit should not be revoked and canceled, because of claimed violations of the law and regulations in the operation of the plant of complainant. The bill further sets forth that the search and seizure made by the prohibition agents was in violation of law, and contrary to the Fourth and Fifth Amendments to the federal Constitution, and that the evidence obtained by the prohibition agents cannot be lawfully used in any proceeding against the complainant.

The prayer is for the suppression of all evidence obtained by the alleged illegal search and seizure, so that same cannot be used in any proceeding, either civil, criminal, equitable, or administrative, against complainant, its officers, stockholders, agents, or employees.

Upon the filing of the bill an order to show cause was made, temporarily restraining the officers of the government from any proceedings preliminary to the disposition of a motion asking for a temporary restraint pending the final hearing in the suit.

The permit to manufacture the cereal beverage was in accordance with the provisions of section 37, tit. 2, of the National Prohibition Act (27 USCA, § 58), which allows the manufacturer holding the permit to develop by the usual methods of fermentation, fortification, or otherwise, a liquid, such as beer, ale, porter, or wine containing more than one-half of 1 per cent. of alcohol by volume, and further provides that "before any such liquid is withdrawn from the factory or otherwise disposed of the alcoholic contents thereof shall under such rules and regulations as the commissioner may prescribe be reduced below such one-half of 1 per centum of alcohol."

Section 9, tit. 2, of the National Prohibition Act (27 USCA § 21) gives authority to the Commissioner, in case of the violation of the conditions of the permit, to issue an order citing the person to appear before him on a day named therein, not more than 30 and not less than 15 days from the date of service; authorizes a hearing, and further provides: "If it be found that such person has been guilty of willfully violating any such laws, as charged, or has not in good faith conformed to the provisions of this chapter, such permit shall be revoked, and no permit shall be granted to such person within one year thereafter."

While the bill of complaint filed prays for an order to suppress all evidence obtained by the prohibition agents, and to prevent its use in any and all proceedings, no criminal action, suit for penalty, or libel, or other action for forfeiture of any of the property of complainant, is now pending. The only action pending at the present time is the notice served by the Commissioner in proceedings to revoke the permit granted to the complainant under section 37 of the National Prohibition Act; the proceedings being in compliance with section 9 of title 2.

My judgment is that the question first to be disposed of in this proceeding is whether the Fourth and Fifth Amendments apply under proceedings of this character? In other words, does the Fourth or Fifth Amendment protect the complainant where there are no criminal, penal, or forfeiture proceedings pending? The Fourth Amendment provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

650 .

and seizures, shall not be violated. * * * "
The Fifth Amendment, among other things, provides that no person "shall be compelled in any Criminal Case to be a witness against himself. * * * "

█ While it ,is true that generally the Fourth and Fifth Amendments may be construed together, there is a clear distinction between the seizing of contraband articles, or property illicitly. possessèd, and the obtaining of papers or writings which may be produced as evidence against the possessor in a criminal, penal, or forfeiture proceeding. The former may be seized on a valid search warrant, or without warrant if the circumstances justify it; whereas the seizure of the latter, unless under exceptional circumstances, by any means is always unlawful.

In Gouled v. United States, 255 U. S. 299, 41 S. Ct. 261, 65 L. Ed. 647, Mr. J. Clarke, who delivered the opinion of the court, said:

"Although search warrants have thus been used in many cases ever since the adoption of the Constitution, and although their use has been extended from time to time to meet new cases within the old rules, nevertheless it is clear that, at common law and as the result of the Boyd [1] and Weeks [2] Cases, supra, they may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a *criminal or penal proceeding*, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken. Boyd Case [116 U. S.] pp. 623, 624, 6 S. Ct. 524, 29 L. Ed. 746." Page. 309 of 255 U. S., 41 S. Ct. 261, 265. (Italics mine.)

█ The provisions of these two amendments protect the liberty of . persons; and· their property from being seized for use against them in all criminal, penal, or forfeiture actions.

█ The present action of the government does not partake of the nature of either of these, but the law merely authorizes the revocation of a certain license or permit which it has given to the complainant, upon the happening of certain events.

█ In my opinion, the complainant ·is not, under the present proceedings now pending against it, entitled to invoke the provisions of the Fourth and Fifth Amendments, to interfere with the investigation being made by government officers for the purpose of ascertaining whether the complainant is entitled to confidence, and to continue to exercise the right to manufacture its product under government permission. None of the cases, which I have been able to find, extends the protection of these amendments to cases of this character.

█ The proceedings on a revocation of a permit, in my opinion, are distinctly civil in their nature, and the regulations of the Prohibition Department give to the Prohibition Administrator and other officers, including officers of the Bureau of Prohibition, authority to inspect the premises of the individual holding the permit at any and all times, not inconsistent with the proper conduct of the business.

"The term 'search,' as applied to searches and seizures, is an examination of a man's house or other buildings or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged. * * * " (35 Cyc. 1264).

"A search warrant is an order in writing, in the name of the people (or the state, or the commonwealth, according to the local practice), signed by a magistrate, directed to a peace officer, commanding him to search for personal . property and bring it before the magistrate. People v. Kempner, 208 N. Y. 16, 101 N. E. 794, Ann. Cas. 1914D, 169, 46 L. R. A. (N. S.) 970. It has also been defined as an examination or inspection, by authority of law, of one's premises or person, with a view to the discovery of stolen, contraband, or illicit property, *or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged*. Newberry v. Carpenter, 107 Mich. 567, 65 N. W. 530, 61 Am. St. Rep. 346, 31 L. R. A. 163. It may be invoked only in furtherance of public prosecutions, and statutes providing for their issuance and execution are sustained under the constitutional provisions forbidding unreasonable search and seizure, only as a necessary means in the *suppression of crime and the detection and punishment of criminals*, and are required to be cautiously framed and strictly construed. * * *

[1] 116 U. S. 616. 6 S. Ct. 524, 29 L. Ed. 746.   [2] 228 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652. L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.

"It is in the nature of a criminal process and is intended to aid in detecting and punishing crime and has no relation to civil process or trials. People v. Kempner, 208 N. Y. 16, 101 N. E. 794, Ann. Cas. 1914D, 169, 46 L. R. A. (N. S.) 970." 24 Ruling Case Law, pp. 701–2. (Italics mine.)

"The constitutional provisions in question are primarily designed to protect the individual in the sanctity of his home and the privacy of his books, papers and property, and they have no application to reasonable rules and regulations adopted in the exercise of the police power for the protection of the public health, morals and welfare. * * *

"Proceedings under a statute authorizing an injunction and attachment to abate a liquor nuisance are not within the contemplation of these provisions. It is similar to a seizure in any other civil attachment proceeding, and has no aspect of an attempt to secure property by search *nor to secure evidence in aid of any contemplated criminal prosecution, and these provisions cannot be invoked as an aid to quashing it.* State v. Marshall, 100 Miss. 626, 56 So. 792, Ann. Cas. 1914A, 434. The protection against unreasonable search and seizure does not apply to searches and seizures under statutes providing for the collection of the public revenue, nor does it conflict with the authority of officers or private persons under proper limitations to arrest without a warrant when authorized by the common law or by statute. Although aliens while in this country are within the protection afforded by the provisions against unreasonable search and seizure, these provisions have no application to a proceeding for the expulsion of aliens, as such a proceeding is not a prosecution for a crime. Fong Yue Ting v. United States, 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905." 24 Ruling Case Law, pp. 704–5. (Italics mine.)

In Re Meador (N. D. Ga.) 16 Fed. Cas. page 1294, No. 9,375, was involved the right of a revenue assessor, under the revenue laws, to require dealers in tobacco to produce their books, papers, etc., relating to business transacted by them, for the purpose of ascertaining if they were paying the proper amount of revenue on products manufactured and marketed by them. In this case the court said:

"Sir William Blackstone, speaking of the excise duty, which is an inland imposition upon commodities, charged, in some cases, on the manufacturer, and in others, on the seller or dealer in the manufactured articles, and answering substantially to our system of internal revenue or taxes, says: 'The frauds that might be committed in this branch of the revenue, unless a strict watch is kept, make it necessary, wherever it is established, to give the officers the power of entering and searching the houses of such as deal in excisable commodities at any hour of the day, and, in many cases, the night likewise.' 1 Bl. Comm. 318. Such was the law of England and of the colonies prior to the war of independence, and so it has continued to this day under the national government, and in nearly every state of the Union; and the validity of this apparently rigorous law, in its application to the inland revenue and the collection of taxes, has never yet been successfully questioned. Vide Act March 3, 1791 (1 Stat. 139); Act May 8, 1792 (1 Stat. 267); Act July 22, 1813 (3 Stat. 22) etc.

"The second point in the question for determination involves the right of the supervisor to issue summons requiring persons to come before him, to testify under oath, and to produce their books, &c., for his inspection. The legal principles which govern the first point in this question are so closely blended with those which control the second, that the answer given to the first might suffice for this.

"The objection made to the power given to the supervisor by the statutes is, as just mentioned, *that it is forbidden by the fourth amendment to the constitution. But this is a civil proceeding, and in no wise does it partake of the character of a criminal prosecution; no offense is charged against the Meadors. Therefore, in this proceeding, the fourth amendment is not violated.* Said Merrick, J., in pronouncing the judgment of the court in Robinson v. Richardson, 13 Gray [Mass.] 454: 'Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings, or for the maintenance of any mere private right; but their use was confined to cases of *public prosecutions*, instituted and pursued for the suppression of crime or the detection and punishment of criminals.' Murray v. Hoboken Land & Imp. Co. [18 How. 272, 15 L. Ed. 372]; supra; 1 Bish. Cr. Proc. § 716. I do not perceive any likeness in principle between the summons issued by the supervisor and either general warrants or writs of assistance." Pages 1298, 1299 of 16 Fed. Cas. (Italics mine.)

In re Strouse (Nev.) 23 Fed. Cas. page 261, No. 13,548, was a proceeding under the

fourteenth section of the Revenue Act 1864 as amended by Act July 13, 1866 (14 Stat. 101) to compel the production of books and to give evidence before an assessor of internal revenue. Strouse was summoned to appear before the assessor to give testimony, and to produce his books relating to his business, and refused to appear in accordance with the summons. Subsequently attachment proceedings were taken against him, and, in construing the effect of the Fourth and Fifth Amendments upon the facts in this case, the court said:

"Second. Upon the second ground that this requirement to produce the books is an unreasonable search, it need only be remarked that the *fourth amendment, supposed to be violated*, like *the clause of the fifth referred to above, is applicable to criminal cases only*. The opinion of Judge Erskine in the Case of the Meadors cited above, leaves nothing to be said on this point." Pages 261, 262 of 23 Fed. Cas. (Italics mine.)

In United States v. Three Tons of Coal (E. D. Wis.) 28 Fed. Cas. page 149, No. 16,515, the court, after a very complete and careful discussion of the effect of the Fourth and Fifth Amendments to the Constitution, among other things, said:

"Other decisions, many of which were cited on the argument, and some of which will be particularly noticed, accomplished the permanent overthrow in England, of the right at common law to search for and seize the private papers of the citizen, *for the purpose of convictions for crime*, or for the purpose of recovery in civil causes, *where the evidence when produced would convict of a felony*. (Chetwind v. Mernell, Exr. 1 Bos. & P. 271); Rex v. Dixon, 3 Burr. 1687; Rex v. Purnell, 1 Wils. 239; Reg. v. Mead, 2 Ld. Raym. 927; Rex v. Cornelius, 2 Strange, 1210. It is to be remarked, that in nearly all of these cases the attempt was made in prosecutions upon information or indictment for crime, to compel the production of the papers of the accused as ground for conviction. The proceeding was direct, and its character as a 'criminal case' was clear. * * *

"So we find it to have been the clear intent of the framers of the amendment, as disclosed not only in its language, but in the original debates, to *restrict the provision to criminal cases*, and with the adoption of the fourth and fifth amendments, principles established at the common law became reaffirmed in the constitution." Pages 151, 152 of 28 Fed. Cas. (Italics mine.)

The seventh syllabus in this case, which summarizes the view of the court generally, reads as follows:

"It is no infringement of personal or constitutional rights for the government. under the act of June 22, 1874, to require the production of, and, if necessary, seize any or all the books and papers kept by them in their business. They are not such private property as to be exempt from seizure and search, nor are they protected by the rules against obtaining from a party evidence to be used against himself. The government has really an interest in such business, as affecting the public revenues."

In the case of Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, Mr. J. Bradley in a well-written opinion, in which he took up generally the effect of the Fourth and Fifth Amendments to the Constitution, and in which, in my opinion, he decided that the Fourth and Fifth Amendments apply only to searches and seizures made in criminal, penal, or forfeiture cases, among other things, said:

"It is our opinion, therefore, that a compulsory production of a man's private papers *to establish a criminal charge against him, or to forfeit his property,* is within the scope of the fourth amendment to the Constitution, in all cases in which a search and seizure would be, because it is a material ingredient, and effects the sole object and purpose of search and seizure." Page 622 of 116 U. S., 6 S. Ct. 524, 528. (Italics mine.)

"In the case of stolen goods, the owner from whom they were stolen is entitled to their possession, and in the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation; or to pursue and drag them from concealment; and in the case of goods seized on attachment or execution, the creditor is entitled to their seizure in satisfaction of his debt; and the examination of a defendant under oath to obtain a discovery of concealed property or credits is a proceeding *merely civil* to effect the ends of justice, and is no more than what the court of chancery would direct on a bill for discovery. Whereas, by the proceeding now under consideration, the court attempts to extort from the party his private books and papers to make *him liable for a penalty or to forfeit his property*. Page 624 of 116 U. S., 6 S. Ct. 524, 529. (Italics mine.)

"Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony, or of his private papers *to be used as evidence to convict him of crime, or to forfeit his goods,* is within the condemnation of that judgment. In this regard the fourth and fifth amendments run almost into each other." Page 630 of 116 U. S., 6 S. Ct. 524, 532. (Italics mine.)

" 'All the said courts of the United States shall have power in the trial of actions at law, on motion and due notice thereof being given, to require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery; and if a plaintiff shall fail to comply with such order to produce books or writings it shall be lawful for the courts respectively, on motion, to give the like judgment for the defendant as in cases of nonsuit; and if a defendant shall fail to comply with such order to produce books or writings, it shall be lawful for the courts respectively, on motion as aforesaid, to give judgment against him or her by default.'

"The restriction of this proceeding to 'cases and under circumstances where they (the parties) might be compelled to produce the same (books or writings) by the ordinary rules of proceeding in chancery,' shows the wisdom of the congress of 1789. The court of chancery had for generations been weighing and balancing the rules to be observed in granting discovery on bills filed for that purpose, in the endeavor to fix upon such as would best secure the ends of justice. To go beyond the point to which that court had gone may well have been thought hazardous. Now it is elementary knowledge *that one cardinal rule of the court of chancery is never to decree a discovery which might tend to convict the party of a crime, or to forfeit his property.* And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, *to convict him of crime, or to forfeit his property,* is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom.

"It is proper to observe that when the objectionable features of the acts of 1863 and 1867 were brought to the attention of congress it passed an act to obviate them. By the act of February 25, 1868 (15 St. 37), entitled 'An act for the protection in certain cases of persons making disclosures as parties, or testifying as witnesses,' the substance of which is incorporated in section 860 of the Revised Statutes, it was enacted 'that no answer or other pleading of any party, and no discovery, or evidence obtained by means of any judicial proceeding from any party or witness in this or any foreign country, shall be given in evidence, or in any manner used against such party or witness, or his property or estate, in any court of the United States, or in any proceeding by or before any officer of the United States, *in respect to any crime, or for the enforcement of any penalty or forfeiture by reason of any act or omission of such party or witness.' "* Pages 631, 632 of 116 U. S., 6 S. Ct. 524, 532. (Italics mine.)

"We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the 'unreasonable searches and seizures' condemned in the fourth amendment are almost always made for the purpose of compelling a man to give evidence against himself, *which in criminal cases is condemned in the fifth amendment;* and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the fifth amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the fourth amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself. We think it is within the clear intent and meaning of those terms. We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal. In this very case the ground of forfeiture, as declared in the twelfth section of the act of 1874, on which the information is based, consists of certain acts of fraud committed against the public revenue in relation to imported merchandise, which are made criminal by the statute; and it is declared, that the offender shall be fined not exceeding $5,000, nor less than $50, or be

imprisoned not exceeding two years, or both and in addition to such fine such merchandise shall be forfeited. These are the penalties affixed to the criminal acts, the forfeiture sought by this suit being one of them. If an indictment had been presented against the claimants, upon conviction the forfeiture of the goods could have been included in the judgment. If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants,—that is, civil in form,—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. *The information, though technically a civil proceeding, is in substance and effect a criminal one.* As showing the close relation between the civil and criminal proceedings on the same statute in such cases we may refer to the recent case of Coffey v. United States, ante [116 U. S.], 436 [6 S. Ct. 437, 29 L. Ed. 684]; in which we decided that an acquittal on a criminal information was a good plea in bar to a civil information for the forfeiture of goods, arising upon the same acts. As, therefore, *suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution,* and of that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the fifth amendment to the constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the fourth amendment." Pages 633–635 of 116 U. S., 6 S. Ct. 524, 534. (Italics mine.)

In the case of United States v. First Nat. Bank of Mobile (D. C. S. D. Ala.) 295 F. 142, which case did not involve an actual search and seizure, but was with relation to the production of papers by a third party, the court's conclusion that the Fourth and Fifth Amendments applied only to criminal prosecutions is found in the following extract from the opinion:

"Said bank refuses to testify and produce the books, and contends that it is protected by the Fourth Amendment to the Constitution from doing so. As I understand the Fourth Amendment, *it protects the parties to criminal prosecution against unreasonable searches and seizures of their papers,* and I do not understand this to authorize a third party, who has books and papers which may be relevant to the inquiry, to refuse to produce such books and papers because of this amendment." Page 143 of 295 F. (Italics mine.)

The theory which I have in the instant case is upheld by the opinion of Johnson, Circuit Judge, in the case of Skeffington v. Katzeff (C. C. A. 1), 277 F. 129, the court's attitude being summarized in syllabus 2, which reads as follows:

"Deportation, when ordered by the proper executive officer of the government, is not visited on the alien as a *penalty for any crime,* and the fact that the reason assigned for his deportation may constitute a crime under the local laws does not make the deportation hearing a trial in a criminal case, to be conducted under the rules of evidence that apply to such a trial." (Italics mine.)

The case of Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, cited in both of the briefs, was with relation to the seizure of incriminating papers, and the court, on page 392 of 232 U. S., 34 S. Ct. 341, 344, with relation to the general protection of the Fourth and Fifth Amendments, used this language: "This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws." It appears that the words, "whether accused of crime or not," in the opinion, are dictum, and, in addition to that, as I construe the court's statement and the words "whether accused of crime or not," I am of the opinion that the effect of this clause is that the evidence procured by an illegal seizure violates the Fourth and Fifth Amendments only when *it is to be used* in a criminal, penal, or forfeiture case.

The proceeding by the Prohibition Department in the present case is for the revocation of a permit under law and regulations which give the permittee the right of review to be heard on the equity side of the court, both as to law and fact. It is merely an investigation by the Department for the pur-

pose of ascertaining whether the party holding the permit has violated any of the provisions of the law or regulations, which disqualifies it from continuing to manufacture its product under the terms of the law and the permit. I think, as noted heretofore, that it is civil in its nature, and, although the bill asks for the suppression of any evidence obtained by the prohibition agents to be used in any manner by the Department in any subsequent proceedings, I am disinclined, at this time and on a preliminary motion, to pass upon the question as to whether the seizure, or the evidence obtained by the seizure, should be suppressed, with relation to any new proceeding hereafter commenced that may be criminal, penal, or for the forfeiture of property.

The bill may be retained, and, if any proceedings of the above nature are commenced, complainant will have the right to make further application to this court under the prayer of the bill filed, or the questions involved may be taken up on final hearing.

The result is a dismissal of the rule to show cause and the temporary restraint therein contained.